[Crim. No. 20988. Mar. 24, 1980.]

In re DANIEL CAUDILLO on Habeas Corpus.

COUNSEL

Quin Denvir, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, Richard Lennon and Louis N. Hiken, Deputy State Public Defenders, for Petitioner.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Howard J. Schwab, Shunji Asari, James H. Kline and Donald F. Roeschke, Deputy Attorneys General, for Respondent.

OPINION

**TOBRINER, Acting C. J.**—This case presents a narrow question of statutory interpretation arising under the Uniform Determinate Sen-

tencing Act (DSL), a statutory enactment which substantially revised the sentencing procedure and length of sentences with regard to many of California's criminal offenses. Under the DSL, the Legislature directed the Community Release Board (CRB)[1] to recompute and revise the terms of prisoners sentenced under the earlier Indeterminate Sentence Law (ISL) to correspond to the terms that the prisoners would have received if the DSL had been in force at the time of their offense. The Legislature recognized, however, that in some cases the conversion of ISL sentences into DSL equivalents would result in an inappropriate reduction of prison terms for dangerous prisoners. Consequently, in order to protect the public from the premature release of such dangerous persons, the Legislature established a "serious offender" procedure as a safety valve, authorizing the CRB—in cases in which the regular DSL term was found inappropriate for an ISL prisoner—to take into consideration the dangerousness of the offender in establishing a new term under the DSL.

In this case we must interpret a provision of the DSL which relates to the time period in which the CRB is authorized to resort to the serious offender procedure in setting an ISL prisoner's revised term. The question presented is whether the CRB is empowered to implement the serious offender provision of the DSL after an ISL prisoner's sentence has been modified by an appellate court's reversal of a portion of the prisoner's original judgment, or whether the CRB's serious offender authority may irrevocably expire prior to the rendition of such an appellate decision.

As we shall explain, in light of the legislative purpose underlying the serious offender procedure, we believe that the Legislature intended that the CRB have a reasonable opportunity to consider the appropriateness of serious offender treatment at a time when the CRB *actually knows* of the terms of the defendant's final judgment. Accordingly, we conclude that under Penal Code section 1170.2, subdivision (b), the CRB is empowered to implement the serious offender procedure and to conduct a serious offender hearing within 120 days of the Department of Corrections' receipt of an amended abstract of judgment which alters the terms of the ISL prisoner's sentence. To effectuate the legislative

---

[1]Pursuant to a statutory revision effective January 1, 1980, the Community Release Board has been renamed the Board of Prison Terms. (Stats. 1979, ch. 255, § 1 et seq.) Because at all times relevant to the instant case the agency was designated the Community Release Board or CRB, we shall refer to the agency by that designation throughout this opinion.

purpose of the serious offender procedure, the term "receipt of the prisoner" as used in section 1170.2, subdivision (b) must properly be interpreted to include the receipt of such an amended abstract of judgment.

### 1. *The facts of the instant case.*

In 1975, a jury found Daniel Caudillo guilty of kidnaping, forcible rape, sodomy, oral copulation, first degree robbery, and first degree burglary. The jury also found that Caudillo was armed with a deadly weapon during the commission of those offenses and that, in the course of the burglary, he inflicted great bodily injury upon his victim. The trial court imposed concurrent sentences for all of the offenses, and because under the then-existing ISL provisions the burglary conviction as enhanced by the great bodily injury finding carried the longest sentence, the trial court stayed the execution of all the sentences except that of burglary. At the time the trial court imposed sentence, Caudillo faced a prison term under the ISL of 15 years to life. He appealed from the judgment of conviction.

Caudillo entered state prison on November 25, 1975. Effective July 1, 1977, the Legislature replaced the ISL with the DSL (Pen. Code, §§ 1170-1170.6). The DSL was made expressly applicable to persons imprisoned for offenses committed prior to its effective date. (§ 1170.2.) Pursuant to section 1170.2, subdivision (a), the CRB recomputed Caudillo's prison term to three years for burglary enhanced by one year for use of a deadly weapon and three years for infliction of great bodily injury during commission of his crime. The total term, as recomputed under section 1170.2, subdivision (a), thus amounted to seven years.

After reviewing Caudillo's file pursuant to the terms of section 1170.2, subdivision (b), the serious offender provision, however, two members of the CRB tentatively determined that Caudillo should serve a term longer than that calculated under subdivision (a). On April 6, 1978, the CRB held a serious offender hearing. Finding the presence of factors permitting the imposition of a longer term under section 1170.2, subdivision (b), the CRB increased the burglary term from three to four years. To this four-year term, the CRB added three years attributable to the trial court's great bodily injury finding, but inadvertently the CRB failed to consider the one-year enhancement for use of a deadly weapon. Thus, following the April 1978 serious offender hearing, Caudillo's term was again set at seven years.

On May 15, 1978, the CRB, recognizing that at the April 6, 1978, hearing it had failed to consider the enhancement of Caudillo's term for the use of a deadly weapon, ordered a new hearing in the case. At the new hearing on July 11, 1978, the CRB, after considering Caudillo's record, concluded that a "total time assessment of seven (7) years was . . . appropriate." Because an accurate conversion of Caudillo's *then-existing* ISL judgment into a DSL equivalent pursuant to section 1170.2, subdivision (a) yielded such a seven-year term (three years (burglary) plus one year (use of a deadly weapon) plus three years (great bodily injury)), the CRB decided at that time that Caudillo's DSL term could be set pursuant to section 1170.2, subdivision (a) and that an extension of the term pursuant to the provisions of section 1170.2, subdivision (b) was not then necessary. This conclusion, of course, rested entirely on the CRB's assumption that Caudillo's section 1170.2, subdivision (a) term would be seven years.[2]

On July 23, 1978, our decision in *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274] became final. In that decision, we found that the evidence did not support the great bodily injury finding, and we ordered the finding stricken from the judgment.[3] On July 27, 1978, the superior court, acting pursuant to our remittitur, modified Caudillo's judgment, striking the great bodily injury finding. The Department of Corrections received the amended abstract of judgment on approximately August 8, 1978.

On August 31, 1978, the Department of Corrections administratively recomputed Caudillo's sentence to four years (three for burglary and one for use of a deadly weapon) and set his parole release date for September 22, 1978. The CRB was not apprised of this administrative recomputation and Caudillo was released on September 22. On October

---

[2]Although the dissent suggests that the CRB panel which conducted the July 11, 1978, hearing was aware of this court's opinion in *People v. Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274] and took that decision into account in setting Caudillo's term at that time, this suggestion is totally untenable in light of the fact that the CRB panel specifically concluded on July 11 that a "total time assessment of seven (7) years was deemed appropriate." If the panel had anticipated that the great bodily injury enhancement would be eliminated, the panel would have computed Caudillo's section 1170.2, subdivision (a) term as only four years, and would not have set the term pursuant to subdivision (a) if, as it indicated, it believed that "a total time . . . of seven . . . years was . . . appropriate."

[3]We also reversed Caudillo's conviction for kidnaping, but inasmuch as the sentence on the kidnaping conviction had been stayed by the trial court, this aspect of our decision did not alter Caudillo's sentence.

24, 1978, the CRB learned of Caudillo's release and ordered him rearrested for the purpose of holding a new serious offender hearing under section 1170.2, subdivision (b).

Caudillo filed the present petition for habeas corpus on October 27, 1978, seeking immediate release. On November 1, the Court of Appeal issued an order directing the CRB to show cause why Caudillo should not be released on parole. At the same time, with one justice dissenting, the Court of Appeal ordered Caudillo's immediate release pending the hearing on the order to show cause. The following day, November 2, 1978, the Attorney General filed a petition for extraordinary relief in this court, seeking an immediate stay of the Court of Appeal's order which had directed Caudillo's release prior to a hearing on the merits of the habeas claim.

On November 3, 1978, pursuant to this court's normal procedure, an order was issued temporarily staying enforcement of the Court of Appeal's order to permit a review of the Attorney General's petition by the entire Supreme Court. After all of the participating justices had an opportunity to review the Attorney General's petition, the court unanimously agreed with the Attorney General's position that Caudillo should not be released prior to a hearing on the merits of his claim. Accordingly, this court vacated the portion of the Court of Appeal's order directing Caudillo's immediate release. We then transferred the matter to the Court of Appeal to permit that court to hear the case and render a decision on the merits.[4]

On November 29, 1978, the CRB held a new serious offender hearing, found once again that the statutory prerequisites for serious offender treatment were present and set Caudillo's DSL term at seven years.[5] Caudillo challenged this action of the CRB in the pending

[4]This court has followed a similar procedure on numerous occasions. (See, e.g., *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 79 [118 Cal.Rptr. 34, 529 P.2d 66].)

[5]In setting Caudillo's term at the November 29 hearing, the CRB enumerated the factors that had gone into its 7-year (84-month) term-fixing determination. First, the CRB concluded that it should impose the upper term, 48 months, for the "base offense"—first degree burglary—because (1) "the base crime was characterized by repeated acts of sodomy and oral copulation in a cruel and callous manner," (2) "the subject was on probation at the time of the commitment offense," (3) "past probation behavior indicates that the subject was on probation only four months when the base offense was committed," and (4) "[the] planning and sophisticated manner in which the crime was committed indicates premeditation (the tire of victim's automobile was slashed to prevent her departure)."

Second, the CRB imposed an enhancement of 12 months for use of a weapon, noting

habeas corpus proceeding, asserting, inter alia, that under section 1170.2, subdivision (b), the CRB lacked jurisdiction to implement the serious offender procedure and to hold a serious offender hearing. The Court of Appeal agreed with Caudillo's argument and overturned the CRB action. We granted the Attorney General's petition for hearing to determine the question of statutory interpretation presented.

2. *The CRB has jurisdiction to hold serious offender hearings within 120 days following receipt by the Department of Corrections of an amended abstract of judgment.*

The Legislature enacted the DSL in 1976, finding "that the elimination of disparity and the provision of uniformity of sentences can best be achieved by determinate sentences fixed by statute in proportion to the seriousness of the offense as determined by the Legislature...." (Pen. Code, § 1170, subd. (a)(1).) Section 1170.2 specifically provides for the redetermination of prison terms of prisoners who had committed felonies prior to July 1, 1977, the operative date of the DSL, and who had been sentenced under the ISL.[6] Under section 1170.2, subdivision

---

that it (as well as the trial court) had made a factual finding that the knife was held at the victim's throat. Finally, the CRB indicated that it was imposing an additional enhancement of 24 months for attempted great bodily injury, noting that in light of the facts described in this court's decision in *People v. Caudillo, supra,* "the panel finds...that the subject did attempt to inflict great bodily injury on the victim." Added together, the 48-month, 12-month and 24-month periods total 84 months or 7 years.

In light of the numerous factors which aggravate the seriousness of Caudillo's conduct, it is clear that the dissent paints an inaccurate picture in suggesting that Caudillo's sentence is disproportionate in comparison to prisoners who have simply been convicted of first degree burglary. (*Post*, pp. 639-640.) The CRB's findings demonstrate without question that Caudillo was not "just" a first degree burglar. Indeed, Caudillo himself does not claim that the CRB abused its discretion under section 1170.2, subdivision (b) in setting his ultimate term at seven years in view of the circumstances of his offenses; Caudillo contends only that by November 29, 1978, the CRB had lost jurisdiction to hold a serious offender hearing and recompute his term.

[6]Section 1170.2 provides in relevant part: "(a) In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1170 if he had committed it after July 1, 1977, the [Community Release Board] shall determine what the length of time of imprisonment would have been under Section 1170 without consideration of good-time credit and utilizing the middle term of the offense bearing the longest term of imprisonment of which the prisoner was convicted increased by any enhancements justified by matters found to be true and which were imposed by the court at the time of sentencing for such felony....

(a), the CRB must recompute a prisoner's ISL term to its DSL equivalent, "utilizing the middle term of the offense bearing the longest term of imprisonment of which the prisoner was convicted increased by any enhancements justified by matters found to be true and which were imposed by the court at the time of sentencing for such felony." The initial recomputation from an ISL sentence to a DSL term under section 1170.2, subdivision (a) is largely mechanical and affords no discretion to the CRB in determining a prisoner's DSL prison term.

The Legislature recognized that situations might arise in which mechanical recomputation from an ISL sentence to a DSL term pursuant to section 1170.2, subdivision (a) would result in the imposition of prison terms of inappropriate length. (*In re Flodihn* (1979) 25 Cal.3d 561, 569-570 [159 Cal.Rptr. 327, 601 P.2d 559].) Accordingly, it enacted section 1170.2, subdivision (b), the serious offender provision. That section provides that upon recomputing a prisoner's term under

---

"(b) If the calculation required under subdivision (a) is less than the time to be served prior to a release date set prior to July 1, 1977, or if a release date had not been set, the [Community Release Board] shall establish the prisoner's parole date, subject to subdivision (d), on the date calculated under subdivision (a) unless at least two of the members of the [Community Release Board] after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions suffered by the prisoner, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted to inflict great bodily injury on the victim of the crime, the prisoner should serve a term longer than that calculated in subdivision (a), in which event the prisoner shall be entitled to a hearing before a panel consisting of at least two members of the [Community Release Board] as provided for in Section 3041.5. The [Community Release Board] shall notify each prisoner who is scheduled for such a hearing within 90 days of July 1, 1977, or within 90 days of the date the prisoner is received by or returned to the custody of the Department of Corrections, whichever is later. *The hearing shall be held before October 1, 1978, or within 120 days of receipt of the prisoner, whichever is later.* It is the intent of the Legislature that the hearings provided for in this subdivision shall be accomplished in the most expeditious manner possible. At such hearing the prisoner shall be entitled to be represented by legal counsel, a release date shall be set, and the prisoner shall be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated. In fixing a term under this section the board shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further, the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration.

"(c) Nothing in this section shall be deemed to keep an inmate in the custody of the Department of Corrections for a period of time longer than he would have been kept in its custody under the provisions of law applicable to him prior to July 1, 1977." (Italics added.)

subdivision (a), the CRB must set the prisoner's parole date in accord with such recomputation "unless at least two of the members of the Community Release Board after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions suffered by the prisoner, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted to inflict great bodily injury on the victim of the crime, the prisoner should serve a term longer than that calculated in subdivision (a). . . ."

If the CRB makes a determination that a longer prison term is warranted in light of the prisoner's record, the prisoner is entitled to a serious offender hearing before a panel consisting of at least two members of the CRB. At the hearing, the prisoner is entitled to be represented by counsel. After the serious offender hearing has been held, the CRB is required to set the prisoner's parole-release date and inform the prisoner in writing "of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated." (§ 1170.2, subd. (b).)

■ The CRB is endowed with significant discretion in fixing a prisoner's term under subdivision (b). Although the statute makes it clear that the CRB may not prescribe a prison term under which a prisoner would be incarcerated for a longer period of time than would have been permissible under the ISL (§ 1170.2, subd. (c); see also U.S. Const., art. I, § 10; Cal. Const., art. I, § 9), the provision places no other absolute limit on the CRB's exercise of sentencing discretion. The section provides that the CRB is to be "guided by, but not limited to," the term which could be imposed on a person who commits a similar offense under similar circumstances and is originally sentenced under the DSL, thus clearly indicating that the CRB may impose a greater term than prescribed under a mechanical DSL conversion. (See *In re Greenwood* (1978) 87 Cal.App.3d 777, 783 [151 Cal.Rptr. 223].) Moreover, the subdivision contains an explicit legislative declaration of a major factor to be taken into account by the CRB in setting a serious offender term, declaring that "the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration." (See *In re Flodihn, supra,* 25 Cal.3d 561, 570.)

In light of the procedure set forth in subdivision (b), the Legislature plainly intended that the CRB determine the appropriateness of serious

offender treatment with knowledge of the prisoner's actual ISL sentence. Generally, the CRB will be informed of the prisoner's ISL sentence at the time he is committed, or at the time it undertakes to recompute the term of a prisoner already committed. On the basis of such knowledge, the CRB can compute the prisoner's DSL term and determine after a review of the record whether, in light of the statutory criteria, a serious offender hearing is warranted. In most cases, the prisoner's ISL sentence and its DSL equivalent will remain unchanged. Thus, the CRB's initial serious offender review will fulfill the legislative purpose.

In some cases, however, a prisoner's actual ISL sentence will be altered at a date after his initial entry into prison. This sequence will most frequently occur when, as in the instant case, a portion of the prisoner's judgment is modified on appeal, and the sentencing court issues an amended abstract of judgment to reflect the final ISL judgment.

The initial question in this case is whether the CRB has the authority to consider or reconsider the appropriateness of serious offender treatment when a sentence has been revised. In light of the statutory purpose of the serious offender provisions, we think that the CRB has such power. Alteration of an ISL sentence changes the corresponding DSL term. The CRB's view of the adequacy of the new DSL equivalent may very well differ from its initial assessment. In providing for serious offender treatment the Legislature sought to make sure that, in converting California's sentencing procedure from the ISL to the DSL, the public would be protected from the premature release of potentially dangerous and violent ISL offenders. It necessarily follows that the CRB should be able to consider serious offender treatment in light of an altered sentence.

In the instant case, Caudillo stands convicted of forcible rape, sodomy, oral copulation, first degree robbery, and first degree burglary. Moreover, he used a deadly weapon in the commission of these crimes. On the three different occasions when the CRB examined Caudillo's record it decided that his DSL prison term should be set at seven years. The CRB could reasonably conclude that a four-year prison term in this case would have been inappropriate in light of the number of Caudillo's serious felonies and the fact that he had used a deadly weapon during the commission of his crimes. (See fn. 5, *ante.*) By electing to hold a serious offender hearing following the modification of Caudillo's judg-

ment, the CRB sought to protect the public from the premature release of a prisoner whom it considered to be potentially dangerous or violent. The CRB's actions thus served the underlying purpose of the serious offender provisions.

Although Caudillo does not take issue with the general proposition that the serious offender provisions of subdivision (b) contemplate that the CRB will reach its decision as to a prisoner's serious offender status with knowledge of the prisoner's actual ISL sentence, he argues that in light of certain language in subdivision (b) regulating the timing of serious offender hearings, the CRB in this case had no jurisdiction to hold a serious offender hearing on November 29, 1978. Specifically, subdivision (b) provides in pertinent part: "The [serious offender] hearing shall be held before October 1, 1978, or within 120 days of receipt of the prisoner, whichever is later." Caudillo argues that since the serious offender hearing at issue herein was not held prior to October 1, 1978 or within 120 days of the time he was *originally* received as a prisoner by the Department of Corrections under the initial, unamended judgment, the CRB had no jurisdiction to hold the hearing and thereby increase his sentence.

As enacted in June 1977—just prior to the operative date of the DSL—section 1170.2, subdivision (b) provided that serious offender hearings "shall be held before April 1, 1978, or within 120 days of receipt of the prisoner, whichever is later." (Stats. 1977, ch. 165, § 18, p. 651.) Subdivision (b) was amended in 1978 as an urgency measure after the CRB had advised the Legislature that it could not complete review of all the prisoner's records before the April 1 deadline. The Legislature thus extended the deadline to October 1, 1978. (Stats. 1978, ch. 329, §§ 1, 7, pp. 673,678.) Such an extension demonstrates the Legislature's concern that potentially dangerous offenders not be automatically released by virtue of the mechanical conversion of their ISL sentences to DSL equivalents under subdivision (a).

Significantly, the Legislature did not establish October 1, 1978, as an absolute cut-off for all serious offender hearings. Rather, it recognized that, for a period of time in the future, the CRB would be receiving new ISL sentences which required both conversion into DSL sentences and review for determination of whether serious offender treatment was appropriate. The Legislature thus afforded the CRB 120 days from such receipt within which it could hold serious offender hearings.

Caudillo argues that the statutory language "120 days from receipt of the prisoner" must be read to refer to the original receipt of the prisoner in state prison, without regard to whether the prisoner's ISL sentence has been altered subsequent to his initial entry into prison. Under this interpretation, however, the CRB would frequently lose jurisdiction to determine the appropriateness of serious offender treatment before the prisoner's *ultimate* ISL judgment was ever issued or received by the Department of Corrections. In light of the purpose of the serious offender provisions, we do not believe that the Legislature intended such a result. Since the serious offender procedure necessarily assumes that the CRB will have notice of the prisoner's actual judgment before the CRB makes the serious offender determination, we conclude that the statutory reference to "receipt of the prisoner" must be interpreted to designate the receipt of the prisoner under an original or a modified ISL judgment.

3. *The Department of Corrections' release of Caudillo on parole did not preclude the CRB from redetermining his term within 120 days of the receipt of the amended ISL judgment.*

Relying on our decision in *In re Haygood* (1975) 14 Cal.3d 802 [122 Cal.Rptr. 760, 537 P.2d 880], Caudillo argues that regardless of whether the CRB had jurisdiction to conduct a serious offender hearing within 120 days following the receipt of his modified ISL judgment, it lacked the power to redetermine his DSL term after he had served his term as administratively recomputed by the Department of Corrections and had been released on parole. For the reasons expressed below, we find that *Haygood* is clearly distinguishable from the case at bench, and we hold that the CRB did have jurisdiction to redetermine Caudillo's term pursuant to its power under section 1170.2, subdivision (b).

In *Haygood*, we stated that Penal Code section 2940 mandated "that a prisoner be discharged upon the expiration of his term as fixed or refixed by the [Adult] Authority. No exception to this mandate exists for actions taken under an erroneous interpretation of either the applicable law or the provisions of a judgment." (14 Cal.3d at p. 812.) Although we noted that "if the discharge were unauthorized by law...the Authority [could] continue to assert jurisdiction," we concluded that "[i]n

other cases . . . once a term has expired, the Authority has no power to revive it." (*Id.*)

At the time *Haygood* was decided, section 2940 provided in pertinent part: "Where the Adult Authority is authorized to fix and refix the term of imprisonment of a prisoner, such prisoner shall be discharged from custody upon the completion of said term so fixed or refixed . . . ." Enactment of the DSL resulted in the repeal of section 2940. We note initially, therefore, that our decision in *Haygood* turned upon a sentencing scheme which did not embody a serious offender procedure and which has since been repealed.

The provisions of the DSL relating to the release and discharge of a prisoner differ from those of former section 2940. Whereas section 2940 provided that a prisoner "*shall be discharged from custody* upon the completion of [the] term" fixed by the Adult Authority (italics added), section 3000 of the Penal Code presently provides only that at the expiration of the term established under the DSL an inmate "shall be released on parole." (§ 3000, subd. (a).) Under the present statute, an inmate is not "discharged from custody" until "his successful completion of parole . . . ." (§ 3000, subd. (d).) Thus, in the instant case, even under the sentence as administratively recomputed by the Department of Corrections, Caudillo—unlike the prisoner in *Haygood*—was still lawfully "in custody" since he had not completed his period of parole.

We need not decide in the present case, however, whether the CRB or the Department of Corrections may correct an erroneous term computation *at any time* during a parolee's term of parole on the ground that the inmate is still lawfully in custody, for we conclude that the CRB's action in the case at bar was in any event proper because Caudillo's DSL term was not "fixed" or "established" at the time of the November 29 serious offender hearing. Rule 2145 of the CRB (Cal. Admin. Code, tit. 15, § 2145) provides in relevant part: "If the prisoner has an ISL release date, the DSL release date shall be compared with the ISL parole date, and the prisoner shall be released on the earlier of the two. [¶] The DSL release date shall be established following either of two methods: [a Penal Code section] 1170.2 (a) date . . . [or a Penal Code section] 1170.2 (b) date . . . ."

In light of our conclusion that the CRB has jurisdiction to hold serious offender hearings pursuant to section 1170.2, subdivision (b) for 120 days following receipt of a modified ISL judgment, it follows that

in cases in which an ISL judgment is modified, a DSL term previously computed pursuant to section 1170.2, subdivision (a) may not be considered final or "established" until those 120 days have elapsed. Thus, whether or not the Department of Corrections had been authorized under existing administrative practices to release Caudillo on parole on September 22, 1978, Caudillo's DSL term was still subject to and dependent upon the CRB's reevaluation and ruling on November 29, 1978. (Cf. *In re Fain* (1976) 65 Cal.App.3d 376, 388-391 [135 Cal. Rptr. 543].)

4.  *Caudillo is not entitled to any relief under
    Morrissey v. Brewer (1972) 408 U.S. 471.*

On December 7, 1978, in a "supplemental traverse" to the People's return to the order to show cause Caudillo for the first time contended that his arrest and reconfinement was invalid in that the termination of his parole status had not been preceded by a due process hearing as prescribed in *Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] and its California progeny. (See, e.g., *People v. Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313]; *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326].)

Caudillo did not raise the *Morrissey* question until December 7, 1978. By this time he had already had an administrative hearing at which he raised all the objections which could have been raised at a *Morrissey* hearing. That hearing, a serious offender hearing, took place on November 29, 1978. At that hearing the CRB rejected all Caudillo's contentions as to the legality of his reconfinement and authorized his continued imprisonment.

Moreover, we have held that "a parolee . . . is not entitled to have the revocation [of parole] set aside unless it appears that the failure to accord him a prerevocation [*Morrissey*] hearing resulted in prejudice to him . . . ." (*In re La Croix* (1974) 12 Cal.3d 146, 154 [115 Cal.Rptr. 344, 524 P.2d 816].) Without question Caudillo could not and did not demonstrate any prejudice to him by the fact that a prerevocation hearing was not held.

In *La Croix*, the prisoner, while on parole, had been arrested and convicted of drunk driving and thereafter had sustained a revocation of parole at an in-prison parole revocation hearing. The prisoner then brought a habeas proceeding, seeking release from confinement on the

ground that he had improperly been denied a timely prerevocation hearing. He argued that "in all instances of a wrongful denial of a timely prerevocation hearing a parolee must be restored to parole status." (12 Cal.3d at p. 155.)

We unanimously rejected the contention that such a denial entitles a prisoner to release on parole. Instead, we concluded that "a parolee . . . is not entitled to have the revocation set aside unless it appears that the failure to accord him a prerevocation hearing resulted in prejudice to him . . . ." (12 Cal.3d at p. 154.)

On the facts of *La Croix*, we found it "manifest that . . . petitioner cannot establish that he was prejudiced by the denial of . . . a timely prerevocation hearing." (12 Cal.3d at pp. 154-155.) We explained that "[h]e does not suggest any manner in which he can successfully challenge the fact of his post-parole conviction of driving while under the influence of intoxicating liquor and the fact that such conviction constituted a violation of a condition of parole. He presents nothing which even suggests that all factual issues to be presented at the summary prerevocation hearing to which he was entitled would not necessarily have been resolved against him . . . . *He thus fails completely to demonstrate prejudice* [citation], *and we can declare without reservation that the denial in this case was harmless beyond a reasonable doubt.* [Citation.]" (Italics added.) (12 Cal.3d at p. 155.) (See also *In re Shapiro* (1975) 14 Cal.3d 711, 717-718 [122 Cal.Rptr. 768, 537 P.2d 888].)

It is equally "manifest" in the instant case that Caudillo can demonstrate no prejudice flowing from the absence of a prerevocation hearing. Having found under the governing statutes that the CRB acted lawfully in resetting Caudillo's term of imprisonment at seven years on November 29, 1978, we have necessarily upheld, *as a matter of law*, the legality of Caudillo's present confinement. Caudillo has had a full opportunity in this proceeding to litigate all of the relevant legal issues, and has suffered no prejudice in this regard from the absence of a prerevocation hearing.

As our decision in *La Croix* recognizes, under such circumstances an order directing Caudillo's release on parole because of the earlier failure to afford a prerevocation hearing would be pointless. Inasmuch as all of the relevant legal issues have been resolved against Caudillo by the present opinion, Caudillo's immediate reimprisonment would inevi-

tably follow. Accordingly, Caudillo is not entitled to relief on this ground.

In sum, we conclude that the CRB acted within its jurisdiction when it held a serious offender hearing and recalculated Caudillo's term within 120 days of receipt by the Department of Corrections of the amended abstract of judgment.

The order to show cause is discharged, and the petition for the writ of habeas corpus is denied.

Richardson, J., Manuel, J., Newman, J., and Racanelli, J.,* concurred.

**MOSK, J.**—I dissent.

Of the 3,054 persons arrested in California for forcible rape in 1975, and the 42,903 arrested for burglary,[1] only Daniel Caudillo became an issue in the 1978 political campaign. Caudillo's criminal conduct does not render him eligible for an outstanding citizen award—the crimes for which he was convicted were of "an outrageous, shocking and despicable nature" (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 575 [146 Cal. Rptr. 859, 580 P.2d 274])—but he is not guilty of seeking political notoriety, it was fortuitously thrust upon him.[2]

As a result, during and since 1978 the *Caudillo* case has been as sensitive as a lightning rod in an electrical storm. Thus Daniel Caudillo has been singled out for unusual attention; he was not given, and is not now being given, the objective and dispassionate treatment to which any person is entitled at the hands of administrative agencies and the judicial process.

The following factors inter alia reveal the peculiar focus upon this petitioner. (1) In the manner discussed *infra*, Caudillo was given a

---

*Assigned by the Acting Chairperson of the Judicial Council.

[1]Crime and Delinquency in California (1978) Department of Justice, part I, page 28.

[2]Although the bench, bar and thoughtful political scientists decry the tendency to project judicial decisions into the political arena, it seems inevitable that some demagogues will do so. Even Chief Justice John Marshall's opinions were subjected to similar treatment. In 1802 he wrote, resignedly: "Our political tempests will long, very long, exist, after those who are now toss'd about by them shall be at rest." (3 Beveridge, The Life of John Marshall (1919) p. 104.)

seven-year sentence, although the mean determinate sentence for first degree burglary is three years, ten months (Judicial Council of Cal., Annual Rep. to the Governor and Leg. (1979) p. 9). (2) He is not now on parole, although the median time to parole release for burglars is two years, seven months (*ibid.*). (3) After being released on parole on September 22, 1978, newspaper interest in that fact during the political campaign stimulated a directive to rearrest him a month later—though he had not been charged with violating any parole provisions—and the directive was transmitted not through normal channels but through an administration public information officer. (4) His right to a *Morrissey v. Brewer* hearing ((1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]) prior to termination of liberty on parole was totally ignored. (5) Although the Court of Appeal ordered his resumption of liberty on parole pending a hearing on an order to show cause, a stay prevented his actual release. (6) The majority now misinterpret clear legislative language and reach a strained result designed to justify Caudillo's rearrest and continued confinement.

Daniel Caudillo is entitled to issuance of a writ of habeas corpus. I am convinced the Court of Appeal, in an opinion by Justice Thompson, concurred in by Justice Lillie, with a separate concurrence by Justice Hanson, reached the correct result. I therefore adopt Justice Thompson's opinion, with minor modifications, as my own.*

This petition for habeas corpus [ ] involves the issue of the power of the Community Release Board (CRB) to rearrest a person duly released on parole in order to extend his previously determined term of confinement by a serious offender hearing pursuant to Penal Code section 1170.2, subdivision (b), held after the terminal date established by the statute for the conduct of such hearings. In particular, the case at bench raises the question of whether an exception to the statutory terminal date should be judicially created to accommodate the situation of reviewing court action which strikes an "enhancement" provision from a sentence.

[I] conclude that, where as here: (1) the CRB was aware of the pendency on appeal of the question of the validity of the enhancement; (2)

---

*Brackets together, in this manner [], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's parallel citations) are, unless otherwise indicated, used to denote insertions or additions. (*Lugosi v. Universal Pictures* (1979) 25 Cal.3d 813, 816, fn. * [160 Cal.Rptr. 323, 603 P.2d 425].) Footnotes in the Court of Appeal opinion have been renumbered sequentially.

the CRB set the prisoner's term in a fashion providing for its reduction if the enhancement were determined to be invalid; (3) the court reviewing the conviction struck the enhancement from the judgment and affirmed it as modified rather than reversing the judgment and remanding the matter for resentencing; and (4) the prisoner fully complied with the terms of his parole after his original release, no exception to the terminal date permitting the prisoner's rearrest for the purpose of holding a hearing to extend his term may be judicially created.

[I would] grant the petition for writ of habeas corpus.

### Preface

[The] petition for habeas corpus which is here involved is not before us in a vacuum.

Daniel Caudillo was convicted of a particularly repulsive series of crimes including burglary, kidnaping, forcible rape, sodomy and oral copulation, and robbery. He brutalized his female victim unspeakably. Action of the CRB in setting his term of imprisonment at seven years subject to reduction for good behavior and other credits became an issue in the 1978 gubernatorial campaign.[ ] The decision of [the] Supreme Court (*People v. Caudillo* (1978) 21 Cal.3d 562 [146 Cal. Rptr. 859, 580 P.2d 274]) which held that as a matter of law the [conduct] did not constitute the infliction of great bodily injury [beyond that necessarily inflicted by a forcible rape] as the term is used in the statute requiring an enhancement was itself a widely debated subject in the 1978 retention election of several justices of the California Supreme Court.

The details of the crime and the political history must be subordinated so that they do not in themselves influence a result here which creates a precedent that may some day be applied unjustly to someone else. (See dissenting opinion of then Judge now Mr. Justice Stevens in *United States v. Barrett* (7th Cir. 1974) 505 F.2d 1091, 1114-1115.) We [should] go where the facts and law[ ] lead us.

### Conviction and Original Sentence

A jury found Daniel Caudillo guilty of kidnaping, forcible rape, sodomy, oral copulation, first degree robbery, and first degree burglary. It found, also, that Caudillo was armed with a deadly weapon during the

commission of those offenses and that in the course of the burglary he inflicted great bodily injury upon his victim. (*People v. Caudillo, supra,* 21 Cal.3d 562, 566-567.) The trial judge sentenced Caudillo to state prison for each offense, ordering that the sentences be served concurrently. Because the governing statute at the time of judgment specified the longest of the terms to be that for burglary as enhanced by the great bodily injury finding, the court stayed execution of the sentences except that for burglary. (*Id.,* at p. 567.) As the California Indeterminate Sentence Law stood at the time the trial court imposed its sentence, Caudillo faced a minimum term in prison of 15 years with the potential of imprisonment for life. (Pen. Code, § 461, before its amendment in 1976.)

Caudillo appealed his conviction, contending along with other assertions of error, that the record did not support the trial court's finding of infliction of great bodily injury in the commission of the burglary. [The Court of Appeal] affirmed the judgment. [This] Court granted hearing.

### *Reduction in the Sentence by the Determinate Sentencing Act*

Caudillo entered state prison on November 25, 1975. Effective July 1, 1977, the Legislature replaced the Indeterminate Sentence Law with a new determinate sentence law. (Pen. Code, §§ 1170-1170.6.) The new law was made expressly applicable to persons imprisoned for offenses committed prior to its effective date. (Pen. Code, § 1170.2.) The law specified a "middle term" of three years imprisonment for first degree burglary with a lower term of two years upon a finding of mitigating circumstances and an "upper term" of four years in the event of a finding of circumstances in aggravation. (Pen. Code, § 461, as amended in 1976.)

The new law required that Caudillo's term be recomputed to the "middle" three-year term for burglary enhanced by the addition of one year by reason of the sentencing court having found to be true the allegation that he used a deadly weapon in the commission of his crime, and three more years because of the trial court finding that he inflicted great bodily injury upon his victim. (Pen. Code, § 1170.2, subd. (a).) As so recomputed, the total term thus became seven years. The seven-year term does not represent the actual period for which a prisoner is incarcerated. The period of imprisonment is reduced by "credits" for "good behavior and participation." (Pen. Code, § 1170.2, subd. (d).)

Another provision of the Determinate Sentencing Act permits the term as so calculated to be increased. Subdivision (b) of Penal Code section 1170.2 permits the CRB, "guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances" after the effective date of the law, to impose a term up to the maximum allowed in the prior law. The longer term may be established where: (1) at least two members of the CRB, after reviewing the prisoner's file, determine that due to factors specified in the subdivision the prisoner should serve a term longer than the term as normally calculated; (2) the prisoner is afforded the opportunity of a hearing with counsel before at least two members of the CRB; and (3) the prisoner is informed in writing of "the extraordinary factors specifically considered determinative and on what basis the release date has been calculated." The subdivision requires that the CRB be "guided" by "the necessity to protect the public from repetition of extraordinary crimes of violence against the person" as "the paramount consideration."

### Proceedings Before the CRB

After reviewing Caudillo's file, two members of the CRB determined, on July 15, 1977, that he should serve a term longer than that normally calculated. On April 6, 1978, the CRB, acting on the screening decision, held a "serious offender hearing" to recalculate Caudillo's term. Factors specified in subdivision (b) of Penal Code section 1170.2 to permit the imposition of a term longer than the normal one were found to be present. Because of those factors, the CRB increased the "base term" from three to four years. It increased the term by three more years because of the trial court finding of infliction of great bodily injury and its independent conclusion based upon the file that the facts supporting the allegation were true. While noting that the trial court had also found that Caudillo used a deadly weapon in the commission of his crimes, the CRB did not include a further one-year enhancement for that finding because in its opinion to do so would be "dual use of the facts."

The ruling of the CRB states: "Panel heard counsel's presentation re pending California Supreme Court consideration of the application of GBI enhancement to prisoner's case. Any legal relief that may result will be the basis for DSL [Determinate Sentencing Act] recomputation as may be appropriate through regular administration channels. . . ." The CRB then set Caudillo's preparole term at 84 months—the upper

base term of 4 years as enhanced by the great bodily injury finding only.

On May 15, 1978, the CRB ordered a rehearing for failure of its original determination to include enhancement for the use of a deadly weapon. About June 27, it received from the Attorney General a copy of the not yet final Supreme Court opinion in *People* v. *Caudillo, supra*, 21 Cal.3d 562, which ordered that the finding that Caudillo had inflicted great bodily injury be stricken from the judgment, that the kidnaping conviction be reversed, and that the judgment as modified by striking the great bodily injury enhancement be otherwise affirmed. On July 11, the CRB reheard the serious offender proceeding.

· At the rehearing and because it concluded that a "total time assessment of seven (7) years was deemed appropriate," the CRB reversed its previous determination that Caudillo was a serious offender.[3] It calculated his term pursuant to subdivision (a) of Penal Code section 1170.2, the normal recalculated term of a person sentenced under the Indeterminate Sentence Law without reference to a serious offender hearing. As recalculated on July 11, 1978, Caudillo's term of imprisonment prior to his parole release date was a base "middle" term of three years, plus one additional year for use of a deadly weapon, plus three more years because of the trial court finding that he had inflicted great bodily injury. The total term was thus seven years subject to reduction for various credits.

Because Caudillo's term was set on July 11 pursuant to subdivision (a) of Penal Code section 1170.2, it could include only enhancements "imposed by the court" and could not include enhancements independently determined by the CRB. (Cal. Admin. Code, tit. 15, § 2153.) The provision for administrative recalculation in the event of Supreme Court relief expressed in the earlier serious offender sentence established on April 6 was thus incorporated by the CRB's rule in the sentence established at the July 11 rehearing as a matter of law.

On July 27, 1978, the superior court, acting pursuant to the remittitur from the Supreme Court, dismissed the charge of kidnaping and

---

[3]The July 11 order cannot be construed as one determining Caudillo a serious offender. It does not include the finding of "extraordinary factors" required by Penal Code section 1170.2, subdivision (b). It sets the term established by Penal Code section 1170.2, subdivision (a).

modified its judgment to strike from it the finding that Caudillo had inflicted great bodily injury upon his victim.

On August 30, 1978, an employee of the Department of Corrections prepared a memorandum asking whether in light of the striking of the great bodily injury finding the matter should be reviewed by the CRB so that either a new serious offender hearing could be held or the CRB could "sign off" on the matter prior to Caudillo's release. On September 12, the Department of Corrections, acting pursuant to its regulations and the order issued by the CRB, administratively recomputed the date of Caudillo's release on parole to September 22, 1978. The Department of Corrections did not inform the CRB of its administrative recomputation. Its failure to do so was in accord with Department of Correction rules and CRB and Department of Corrections practice followed from the time the Determinate Sentencing Act became effective.

### Caudillo's Release and Rearrest

Caudillo was released on September 22, 1978. On October 24, 1978, chief counsel for the CRB received a telephone call from a reporter for the Sacramento Bee inquiring whether Caudillo had been released from prison. The executive officer for the Community Release Board and the chief deputy director of the Department of Corrections "decided to have . . . Caudillo arrested and returned to prison on the term he had not completed serving until a panel of CRB members could review his case and either set a new term pursuant to Penal Code Section 1170.2(a) or rehear his case pursuant to Penal Code Section 1170.2(b)."

The directive to rearrest Caudillo was transmitted through the public information officer of the CRB. On October 24, 1978, Caudillo was rearrested and booked at the Los Angeles County jail.

### The Petition for Habeas Corpus

On October 27, Caudillo filed the petition for habeas corpus which is now before us. No initial hearing pursuant to *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] was ever held concerning the termination of Caudillo's liberty on parole. [The Court of Appeal] requested a preliminary response from the Attorney General.

[In *Morrissey* v. *Brewer*, the United States Supreme Court held that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others.... By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment" (*id.*, at p. 482 [33 L.Ed.2d at p. 495]). As a result, *Morrissey* holds that parole cannot be terminated summarily for any reason; therefore "the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case" (*id.*, at p. 485 [33 L.Ed.2d at p. 497]). The preliminary hearing requires that "the parolee should be given notice that the hearing will take place" and the reasons therefor (*id.*, at p. 486 [33 L.Ed.2d at p. 497]). The impartial hearing officer who presides "shall have the duty of making a summary, or digest, of what occurs at the hearing" (*id.*, p. 487 [33 L.Ed.2d at p. 498]). In the unseemly haste to return Caudillo to prison before November 7 all of the *Morrissey* requirements were blithely ignored. (Also see *People* v. *Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622].)]

On November 1, 1978, [the Court of Appeal] issued [an] order directing the CRB to show cause why Caudillo should not be released on his parole. [ ] Because the Attorney General's preliminary response disclosed no reason apparent [ ] why the relief sought by Caudillo's petition would not be granted, [the Court of Appeal] ordered Caudillo's immediate release from custody and on the terms of his original CRB parole pending hearing on the OSC. (See also *Morrissey* v. *Brewer, supra*, 408 U.S. 471.)

The Attorney General petitioned the California Supreme Court for an extraordinary writ to vacate [the] order. On November 3, 1978, [this court] issued an order staying enforcement of [the] order to show cause and order for release pending hearing on it. Because the order staying enforcement of [the] OSC remained in force on November 28, the date [ ] set for the hearing on it, [the Court of Appeal] placed the matter off calendar. On November 29, [this court issued an order] vacating the order for Caudillo's release pending hearing on the orders to show cause, and retransferring the matter to [the Court of Appeal].

### Merit of the Petition

Penal Code section 3052 vests power in the CRB "to establish... rules and regulations under which prisoners committed to state prisons

may be allowed to go upon parole...." Rule 2355 of the CRB (Cal. Admin. Code, tit. 15, § 2355) requires that an Indeterminate Sentence Law prisoner be placed upon parole "when all the provisions of these rules and any applicable Department [of Corrections] regulations have been met." Regulation 3500 of the Department of Corrections (Cal. Admin. Code, tit. 15, § 3500) states: "Release on parole for inmates sentenced pursuant to section 1168 of the Penal Code...will occur when the provisions set by the [CRB] are met."

Penal Code section 1168 deals in part with prisoners sentenced before the effective date of the Determinate Sentencing Act and hence to an indeterminate term.[4] Amplifying section 1168, Penal Code section 1170.2 requires that the prior indeterminate sentence be replaced with a preparole term established in accord with the provisions of the new Determinate Sentencing Act.

Penal Code section 1170.2 provides specifically for the manner of establishing the preparole term of prisoners previously sentenced under the prior law. Rule 2145 of the CRB (Cal. Admin. Code, tit. 15, § 2145) states "...the prisoner shall be released on the earlier of [the calculated determinate sentence law release date or his prior indeterminate sentence release date]."

As noted, the result of application of section 1170.2 to Caudillo resulted first in an aborted determination of a preparole term of imprisonment of seven years expressly subject to reduction in the event the Supreme Court should grant relief from the great bodily injury enhancement from the judgment. The action of the CRB upon rehearing the original determination set the term again at seven years but this time, because of the language of subdivision (a) of section 1170.2, also subject to a three-year reduction as a matter of law in the event the previously expressed contingency of Supreme Court action occurred.

[This] court ordered the great bodily injury finding stricken from the judgment. [We] did not return the matter to the trial court so that it might reexercise its sentencing discretion and possibly modify the scheme of sentences imposed so that the sentence carried into execution was that for rape a crime carrying a term greater than burglary (Pen.

---

[4]See Penal Code section 1170 cross-reference to Penal Code section 1168 as to crimes committed prior to July 1, 1977.

Code, § 264, as amended in 1976) with other sentences consecutive to the extent permitted by Penal Code section 654.

When [this] court ordered the great bodily injury finding stricken from the judgment, Caudillo's term prior to parole was reduced from seven to four years by reason of Penal Code section 1170.2, subdivision (a), the statute under which the CRB ordered him confined. Because by September 22, 1978, Caudillo had served the four-year term once he was given the benefit of the statutory "credit" against the term to which he was entitled, rules 2145 and 2355 of the CRB and regulation 3500 of the Department of Corrections required that he be released on parole. He was released on parole on that date.

Thus, unless some applicable provision of law permits a parolee to be retaken into custody after he is released in accord with governing statutes and rules and regulations adopted pursuant to the statutes, Caudillo's rearrest was illegal and his continued physical confinement is contrary to law.

The Attorney General, representing the CRB, points to no such applicable provision of law in his brief and admits in oral argument that he can find none. The CRB's contentions are in essence that: (1) its course of action was a mistake, which it as an administrative agency can correct; and (2) a reviewing court modification in a judgment of conviction which strikes an enhancement provision of itself permits the CRB to hold a new serious offender hearing to extend what would otherwise be the resulting term of preparole confinement.

The CRB's argument that it was authorized to rearrest Caudillo so that it could convene a new serious offender hearing runs afoul of the facts and the law.

The record shows no error in the manner in which the CRB proceeded to an eventual determination that Caudillo was not a "serious offender" and was hence to be sentenced under subdivision (a) of Penal Code section 1170.2. It shows no action of the CRB contrary to the scope of discretion vested in it. (See *In re Greenwood* (1978) 87 Cal. App.3d 777, 786-787 [151 Cal.Rptr. 223].)

The CRB characterizes its action releasing Caudillo on parole as a mistake only on the theory that its action as taken was not intended to reduce Caudillo's term to less than seven years. So characterized, the

"mistake" is not the sort of board error that may be corrected after the board's power, as expressed in the statute and its own regulations, has expired.[5] [We have previously] dealt with a similar argument asserted by the Adult Authority to justify its action in extending a prisoner's term after he had been released pursuant to an administrative determination of the authority. [We] said in reference to the argument: "No exception to [the] mandate [of Penal Code section 2940 that a prisoner be released upon the expiration of his term as fixed or refixed by the Authority] exists for actions taken under an erroneous interpretation of either the applicable law or the provisions of a judgment. Only if the discharge were unauthorized by law, as in the case of a prisoner undergoing a life sentence, could the Authority continue to assert jurisdiction." (*In re Haygood* (1975) 14 Cal.3d 802 [122 Cal.Rptr. 760, 537 P.2d 880].) While the Determinate Sentencing Act has resulted in the repeal of Penal Code section 2940 along with the bulk of the remainder of the law dealing with the now defunct Adult Authority, the substance of section 2940 is now included in CRB rules 2145 and 2355, *supra*, and Department of Corrections regulation 3500, *supra*, to the extent that the substance is relevant to the context of the case at bench. (See *People v. Superior Court* (*Gonzales*) (1978) 78 Cal.App.3d 134 [144 Cal.Rptr. 89]; the CRB has succeeded to the power of the Adult Authority.) (2) The rules and regulation require that the prisoner be discharged on parole after he has served the administratively determined period. Neither the statutes, rules, nor regulations contain any provision for further exercise of the jurisdiction of the CRB to refix the term after the prisoner has been released on parole except for the instance in which he violates its terms.

If we were to assume despite [the] decision in *Haygood* that the CRB has authority to retake physical custody of a prisoner released on parole to correct an erroneous application of the law or of the provisions of a judgment, the record here compels the conclusion that Caudillo was not released because of the presence of either of those factors. The CRB was aware that the Supreme Court was considering the validity of the enhancement; it recited that fact in its first ruling. The CRB was aware of the actual, although not then final, decision of [this] court when it elected on rehearing to proceed by assessing the normal "middle" term

---

[5]Prior to Caudillo's release on parole, the CRB had the power to postpone or rescind his release date. (Cal. Admin. Code, tit. 15, §§ 2450 and 2451, subd. (c); see also *In re Fain* (1976) 65 Cal.App.3d 376 [135 Cal.Rptr. 543].) However, it did not exercise its power.

as enhanced rather than the serious offender term; it had been furnished a copy of the opinion. Scores, if not hundreds, of cases have now gone by the boards in which enhancements have been stricken from judgments. In every one of them, Penal Code section 1170.2, subdivision (a) has required that the addition to the term resulting from the stricken enhancement be removed. It strains credulity to give serious consideration to the CRB's contention that the members of the CRB, women and men appointed to positions of high quasi-judicial trust for the very expertise involved in their determination, would ignore the information in their possession or be unfamiliar with the simple, commonly applied governing legal principle.

Still another proposition compels the conclusion that Caudillo was illegally arrested and is unlawfully detained.

As originally enacted, Penal Code section 1170.2, subdivision (b) provided that any serious offender hearing "shall be held before April 1, 1978, or within 120 days of receipt of the prisoner, whichever is later. The [Community Release] Board may by resolution extend this period an additional 90 days. However, such resolution shall have no force or effect if vetoed by resolution of either house of the Legislature." In 1978, the Legislature enacted an amendment to subdivision (b) of section 1170.2. That amendment states that a serious offender hearing "shall be held before October 1, 1978, or within 120 days of receipt of the prisoner, whichever is later." The 1978 amendment was enacted as an "urgency measure" so that it became effective immediately upon the date it was signed by the Governor. (Stats. 1978, ch. 329, § 1.) The Governor signed the bill into law on June 30, 1978.

Thus, unless some exception is implied in subdivision (b) of Penal Code section 1170.2 as the subsection was amended in 1978, the Community Release Board was without power to hold a serious offender hearing to increase Caudillo's term after October 1, 1978. Caudillo was "received" as a prisoner in 1975, so that the 120-day period expressed as an alternative terminal date[6] for holding the hearing had long expired before Caudillo was rearrested. If the CRB was without power to hold a serious offender hearing, it follows that it was without power to

---

[6]Seemingly the prime reasons for the 120-day period are to permit a serious offender hearing where a person sentenced under the prior law who was placed on probation is received at state prison upon violation of probation or where the prisoner was a fugitive.

rearrest Caudillo and to restrain his liberty solely for the purpose of holding the hearing.

The CRB argues in opposition to the result seemingly compelled by the face of the statute that: (1) the October 1, 1978, deadline is merely directory and not a limitation upon the power of the board to hold serious offender hearings; and (2) the 120-day period must be construed to begin to run anew when the judgment under which a prisoner is confined is modified because of action of a reviewing court.

Statutory history compels the conclusion that the time limits set by the Legislature within subdivision (b) of Penal Code section 1170.2 are mandatory.

"[T]he 'directory' or 'mandatory' designation [of legislation]... simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606].) Here the statute must be construed as requiring CRB action within the time limits specified if that action is to be valid in extending the term of confinement of a prisoner. As originally enacted, the subdivision expressly permitted the CRB by regulation to extend the time limit for an additional period. The original legislation expressed an intent that the authority to extend granted the CRB was a limited one by retaining the power of either house of the Legislature to veto the regulation of extension. When, in 1978, the Legislature removed the power to extend the period for serious offender hearings and substituted a fixed cutoff date, it clearly announced its intent that the hearings could not be held after October 1, 1978. By making the legislation an urgency measure so that it became effective immediately, the Legislature emblazoned its intent in neon of Las Vegas proportions.

[Therefore I] conclude that unless the 120-day period which runs from "receipt" of the prisoner began anew upon [this] court's action in striking the great bodily injury enhancement from the judgment or upon Caudillo's rearrest or unless there is an implied exception to the October 1 cutoff, the CRB is without power to conduct a new serious offender hearing to extend his sentence.

On the facts presented here, a new 120-day period did not commence.

It is conceivable that action of a reviewing court may affect a judgment in a fashion which results in a prisoner being "received" anew by the CRB. If, for example, [ ] *People* v. *Caudillo, supra*, 21 Cal.3d 562, had remanded the matter to the trial court for resentencing, there would be an arguable claim that, once the new sentence was imposed and Caudillo remanded to the CRB to serve it, he would be again received. Here, however, [this] court did not remand the matter for resentencing despite the fact that had it done so the trial court could have recouped a portion of the period lost through the striking of the great bodily injury enhancement by vacating its stay of execution of its sentence for rape (Pen. Code, § 264, as amended in 1976) and possibly by imposing consecutive sentences. Without vacating the trial court stay of execution of sentences on convictions for crimes other than burglary, [our] court ordered the enhancement stricken and the original sentence carried out as so modified. [It must be assumed that we were] aware of the consequences of [our] action in light of the Determinate Sentencing Act and that [we] considered them in crafting [the] disposition. (But cf. Johnson, *The Accidental Decision and How It Happens* (1977) 65 Cal.L.Rev. 231.) The court opinion [did] not [impose] a new sentence upon which Caudillo could constructively be received afresh by the CRB.

It is conceivable that an exception to the October 1, 1978, cutoff date for serious offender hearing might be implied in the statute to accommodate action of reviewing courts that could not reasonably have been anticipated by the CRB when it established a term. Here, however, the action of the Supreme Court in *People* v. *Caudillo* was clearly anticipated. The original action of the CRB recites the possibility that [this] court might determine that the great bodily injury enhancement was invalid and provides for ministerial action to take the effect of the action into account should the contingency occur. The action of the CRB on rehearing occurred after the board had been furnished with a copy of [our] opinion.

[Thus there is] presented [ ] a situation in which the governing statute on its face states that the authority of the CRB to conduct a serious offender hearing had terminated by the time Caudillo was rearrested. [The] record supplies no factual basis for so much as considering the only possible means by which the strictures of the face statute may be avoided. In that situation, the CRB was without authority to order Caudillo's rearrest so that it could conduct an untimely serious offender hearing. While the CRB order for Caudillo's rearrest also states it is for

the purpose of recomputing his term without reference to a serious offender hearing, that theory of propriety of the CRB's action is not argued by the CRB in this proceeding. [ ]

### Conclusion

It follows then that the controlling statute and the action of the Community Release Board prior to Caudillo's release on parole compel the conclusion that his rearrest was illegal and his continued confinement contrary to law. It may be that, as argued by the CRB, a potentially dangerous person [would be] set at large in the community. [He would be on parole, however, so that any violation of law or infraction of parole restrictions would result in his reconfinement. Moreover, there is] a far greater and longer range danger to a government of law [when courts] ignore compelling principle and the record to avoid an otherwise compelled result.

The writ of habeas corpus [should issue]. [ ]

Clark, J., concurred.

Petitioner's application for a rehearing was denied April 23, 1980. Bird, C. J., did not participate therein. Mosk, J., and Clark, J., were of the opinion that the application should be granted.