[Crim. No. 20124. First Dist., Div. Four. June 30, 1980.]

In re WILLIAM M. JOHNSON on Habeas Corpus.

## COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Karl S. Mayer and Kenneth C. Young, Deputy Attorneys General, for Appellant.

Diana Samuelson, under appointment by the Court of Appeal, for Respondent.

## OPINION

**RATTIGAN, J.**—Respondent William M. Johnson was under sentences to state prison when the Uniform Determinate Sentencing Act of 1976 (Pen. Code, § 1170 et seq.) became effective on July 1, 1977.[1] Appellant Community Release Board[2] recalculated his prison term pursuant to subdivision (a) of section 1170.2, but extended it for cause, after conducting a so-called "serious offender hearing" pursuant to subdivision (b) of the same statute.[3] Respondent petitioned the superior court for a

---

[1]Statutory references are to the Penal Code except where otherwise indicated. The effective date of the act cited was established when it was enacted in 1976. (Stats. 1976, ch. 1139, § 351.5, p. 5176.) The act has been amended several times since. (See Stats. 1977, ch. 2, p. 4; Stats. 1977, ch. 165, p. 639; Stats. 1978, ch. 579, p. 1980; Stats. 1979, ch. 255, §§ 8 and 9, pp. 549-551.)

[2]The 1979 Legislature changed the name of the Community Release Board to Board of Prison Terms. (Stats. 1979, ch. 255, p. 547; see particularly *id.*, §§ 8 and 9, pp. 549-555.) We refer to it in this opinion as the Board.

[3]As pertinent here, the statute provided: "1170.2. (a) In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1170 if he had committed it after July 1, 1977, the Community Release Board shall determine what the length of time of imprisonment would have been under Section 1170 without consideration of good-time credit and utilizing the middle term of the offense bearing the longest term of imprisonment of which the prisoner was convicted increased by any enhancements justified by matters found to be true and which were imposed by the court at the time of sentencing for such felony. Such matters

writ of habeas corpus, contending that the Board's action extending his term was invalid because the serious offender hearing was not conducted within 120 days of his "receipt" by the Department of Corrections as provided in subdivision (b) of section 1170.2. (See fn. 3, *ante.*) The court entered a judgment granting his petition and requiring his discharge from prison. The Board appeals from this judgment. We affirm it.

## FACTS

The record supports the following factual recitals:

Respondent was convicted of various felonies in two separate superior courts during 1977. He was consequently sentenced to state prison in April and June of that year. Due to protracted appeals and other proceedings, he was not actually received by the Department of

---

include:...[being armed with a deadly or dangerous weapon, using a firearm, inflicting great bodily injury, having a prior felony conviction, and]...any consecutive sentence.

"(b) If the calculation required under subdivision (a) is less than the time to be served prior to a release date set prior to July 1, 1977, or if a release date had not been set, the Community Release Board shall establish the prisoner's parole date...on the date calculated under subdivision (a) *unless* at least two of the members of the Community Release Board after reviewing the prisoner's file, determine that due to the number of crimes of which the prisoner was convicted, or due to the number of prior convictions suffered by the prisoner, or due to the fact that the prisoner was armed with a deadly weapon when the crime was committed, or used a deadly weapon during the commission of the crime, or inflicted or attempted to inflict great bodily injury on the victim of the crime, the prisoner should serve a term longer than that calculated in subdivision (a), *in which event the prisoner shall be entitled to a hearing* before a panel consisting of at least two members of the Community Release Board....The Community Release Board shall notify each prisoner who is scheduled for such a hearing within 90 days of July 1, 1977, or within 90 days of the date the prisoner is received by or returned to the custody of the Department of Corrections, whichever is later. *The hearing shall be held before October 1, 1978, or within 120 days of receipt of the prisoner, whichever is later.* It is the intent of the Legislature that the hearings provided for in this subdivision shall be accomplished in the most expeditious manner possible. At such hearing the prisoner shall be entitled to be represented by legal counsel, a release date shall be set, and the prisoner shall be informed in writing of the extraordinary factors specifically considered determinative and on what basis the release date has been calculated. The Attorney General or the district attorney of the county from which the prisoner was committed shall be entitled to be present at and to participate in such hearings. In fixing a term under this section the board shall be guided by, but not limited to, the term which reasonably could be imposed on a person who committed a similar offense under similar circumstances on or after July 1, 1977, and further, the board shall be guided by the following finding and declaration hereby made by the Legislature: that the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the paramount consideration." (Italics added.) (Stats. 1978, ch. 329, § 1, p. 673, § 7, p. 679, eff. June 30, 1978.)

Corrections, as a prisoner, until he arrived at San Quentin Prison on November 29, 1978. The Determinate Sentencing Act having meanwhile become operative on July 1, 1977 (see fn. 1, *ante*), the Board proceeded to act pursuant to section 1170.2 in respondent's case. The following events occurred in 1979:

On January 24, his prison term was recalculated and he was given a release (parole) date set at June 20, 1979. On March 1, two Board members ordered a serious offender hearing in his case and scheduled it for April 17. Respondent was given notice of the hearing on March 5.[4]

In a letter written to the Board on April 6, respondent's attorney protested that it lacked jurisdiction to proceed with the hearing because the scheduled date was not within 120 days of respondent's "receipt" by the Department of Corrections as provided in subdivision (b) of section 1170.2.[5] The Board treated this communication as a request for cancellation of the hearing, denied it by letter, and conducted the hearing on April 17 as scheduled. On the same day, the Board made an order extending respondent's prison term to 76 months.

### THE PRESENT PROCEEDING

On May 17, 1979, respondent petitioned the superior court for a writ of habeas corpus as described above. He requested in the prayer of his petition that the court "order the...[Board]...to set aside its decision of April 17, 1979, and...reinstate...[his]...previously set parole release date of June 20, 1979." The superior court ordered the issuance of an order to show cause addressed to the Board, which alleged in its return that it had "had jursidiction to hold a hearing pursuant to the provisions of Penal Code section 1170.2(b) on April 17, 1979."

The superior court conducted a hearing on the petition and ordered it granted. On July 25, 1979, the court entered a judgment ("Order Granting Writ of Habeas Corpus") commanding the Board "to discharge...[respondent]...from custody and on parole when this judgment becomes final." The judgment thus has the effect of reinstating

---

[4]We observe in passing that this notice was not given "within 90 days of July 1, 1977, or within 90 days of the date" respondent had been "received," as prescribed in section 1170.2, subdivision (b). (See fn. 3, *ante*.)

[5]By reason of his "receipt" on November 29, 1978, the last day of the 120-day period was March 29, 1979.

respondent's previous release date of June 20, 1979, as prayed. The Board's appeal followed.

REVIEW

 It is undisputed that November 29, 1978, was the date of respondent's "receipt" by the Department of Corrections as that term is used in section 1170.2, subdivision (b). (See fn. 3, *ante.*) It is also undisputed that his serious offender hearing was not conducted within 120 days of that date as provided in the same statute. (See fn. 3.) For these reasons, the superior court determined in effect that the action extending his prison term was void because the Board exceeded its jurisdiction when it conducted the hearing after the 120-day period had elapsed. The Board claims error on the grounds that the 120-day limitation was intended by the Legislature to be merely "directory," not "mandatory," and that it acted within its jurisdiction because the record shows "substantial compliance" with the statute. Respondent contends that the 120-day limitation is absolutely "mandatory," and that the Board's failure to conduct the hearing within the prescribed period cannot be excused on a theory of "substantial compliance" in any event.

Respondent's first contention must be sustained. As applied to some statutes, "the term 'mandatory' refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses. By contrast, the 'directory' or 'mandatory' designation does not refer to whether a particular statutory requirement is 'permissive' or 'obligatory,' but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates. [Citations.]" (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606]; see also *ibid.*, fn. 4; *People* v. *McGee* (1977) 19 Cal.3d 948, 958-959 [140 Cal.Rptr. 657, 568 P.2d 382].)

"'In order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required

time . . . .'" (*Morris* v. *County of Marin, supra*, 18 Cal.3d 901 at p. 910 [quoting from *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 (175 P.2d 1)].) Consideration of these and other factors compels the conclusion that the Legislature intended that the 120-day provision in section 1170.2, subdivision (b), be given "mandatory" and not "directory" effect.

An earlier version of the statute provided that a serious offender hearing "shall be held before April 1, 1978, or within 120 days of receipt of the prisoner, whichever is later," but added the following provisions: "The board may by resolution *extend this period* an additional 90 days. However, such resolution shall have no force or effect if vetoed by resolution of either house of the Legislature." (Stats. 1977, ch. 165, § 18, p. 651 [italics added].) The Legislature's deletion of these provisions in the currently applicable version (see fn. 3, *ante*) demonstrates its intent to divest the Board of any authority to extend the 120-day limitation, subject to legislative veto or otherwise.

The Board's own administrative regulations provide that a serious offender hearing "*shall* be conducted . . . within 120 days of reception [of the affected prisoner]." (Cal. Admin. Code, tit. 15, § 2165, subd. (k) [italics added].) The regulations also provide that their use of the word "shall" is "mandatory." (*Id.*, § 2000, subd. (a)(5).) Significantly, they recognize other time limitations which are merely "directory" in nature and do not affect the Board's jurisdiction. (See, e.g., *id.*, § 2640, subd. (a).)

The Board also argues that a statutory requirement is to be construed as "directory," and not "mandatory," where—as in the present case— the statute provides no means of its enforcement. The principle of this argument is ostensibly supported by the decision cited for it (see *Campbell Elementary Teachers Assn., Inc.* v. *Abbott* (1978) 76 Cal.App.3d 796, 806 [143 Cal.Rptr. 281]), but the Supreme Court has effectively rejected it by disapproving its source. (*People* v. *McGee, supra*, 19 Cal.3d 948 at p. 962, fn. 5 [disapproving the "dictum" in *Gowanlock* v. *Turner* (1954) 42 Cal.2d 296, 301 (267 P.2d 310)].)

In the assessment of a procedural requirement in a statute as "mandatory" or "directory," consideration must also be given to whether it "was intended to provide protection or benefit" to individuals or "was instead simply designed to serve some collateral, administrative purpose." (*People* v. *McGee, supra*, 19 Cal.3d 948 at p. 963.) The Attor-

ney General argues in effect that the 120-day limitation in question serves an administrative purpose only, stating that it was intended "to require the transition between the indeterminate and determinate [sentencing] laws to be accomplished as quickly as practicable." He further contends that in adopting the limitation "the Legislature was not acting with any intent to confer a *benefit* upon criminal offenders." (Italics added.)

We disagree with both arguments. The statute includes an express declaration of "the intent of the Legislature that the hearings provided for in this subdivision shall be accomplished in the most expeditious manner possible." (See fn. 3, *ante.*) If the only purpose of the subdivision were to admonish the Board to conduct serious offender hearings expeditiously, the declaration would have served it. The additional provision establishing the precise 120-day limitation on the conduct of the hearings would have added nothing unless it were intended to effect an absolute deadline after which the Board cannot proceed. (See *Serrato* v. *Superior Court* (1978) 76 Cal.App.3d 459, 465 [142 Cal.Rptr. 882].)

Moreover, the interpretation of the limitation as effecting an absolute deadline comports with the view that the Legislature intended it to "benefit" prisoners by protecting them against indefinitely prolonged uncertainty as to the duration of their confinement and the devastating effect of 11th-hour postponements of release dates they had been led to expect. (See Prettyman, *The Indeterminate Sentence and the Right to Treatment* (1972) 11 Am.Crim. L.Rev. 7, 24-25; *Review of Selected 1976 California Legislation* (1977) 8 Pacific L.J. 165, 291.) The absolute interpretation is also consistent with the "elimination of disparity and the provision of uniformity of sentences," which are among the express purposes of the Determinate Sentencing Act. (See § 1170, subd. (a)(1).)

The Supreme Court has recently held that the Board has jurisdiction to conduct a serious offender hearing within 120 days after "receipt" by the Department of Corrections of an amended abstract of a judgment of conviction which was initially entered before July 1, 1977, and which sentenced a prisoner whose consequent physical "receipt" by the department had commenced the running of an earlier 120-day period. (*In re Caudillo* (1980) 26 Cal.3d 623, 630-635 [164 Cal.Rptr. 692, 610 P.2d 1021].) The effect of the holding is to reinvest the Board with jurisdiction to conduct the hearing, within another 120 days, where a judgment entered pursuant to the former Indeterminate Sentence Law (ISL)

has been substantially modified and transmitted to the department as modified. (See *In re Caudillo, supra*, at p. 628.)

The *Caudillo* court concluded that this interpretation was necessary because it was unable to perceive a legislative intent that the Board would "lose jurisdiction to determine the appropriateness of serious offender treatment before the prisoner's *ultimate* ISL judgment was ever issued or received by the Department of Corrections." (*In re Caudillo, supra*, 26 Cal.3d 623 at p. 635 [original italics].) The court's reasoning limits the application of its holding to any case where an "ultimate" ISL judgment reaches the Department of Corrections after the affected prisoner does. Because this did not occur in the present case, *Caudillo* does not affect our conclusion that the Board's jurisdiction to conduct a serious offender hearing terminated 120 days after the department's "receipt" of respondent himself. The trial court having arrived at the same conclusion, the result it reached must be sustained.

The judgment is affirmed.

Caldecott, P. J., and Christian, J., concurred.

A petition for a rehearing was denied July 22, 1980, and appellant's petition for a hearing by the Supreme Court was denied August 28, 1980. Manuel, J., was of the opinion that the petition should be granted.