[Crim. No. 14271. Fourth Dist., Div. Two. Feb. 18, 1981.]

In re FERDINAND G. SCHAEFER on Habeas Corpus.

COUNSEL

Ferdinand G. Schaefer, in pro. per., for Petitioner.

Quin Denvir, State Public Defender, and Richard Lennon, Deputy State Public Defender, as Amici Curiae on behalf of Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Steven V. Adler, Deputy Attorneys General, for Respondent.

OPINION

**TAMURA, J.**—Defendant, an inmate of California Institution for Men, Chino, California, filed a petition for a writ of habeas corpus on the ground that he was being held in prison beyond his legal release date. He contended that he had not received proper credit for presentence time pursuant to Penal Code section 2900.5,[1] that his calculated determinate sentencing law (DSL) term violated the rule of *People* v. *Harvey* (1979) 25 Cal.3d 754, [159 Cal.Rptr. 696, 602 P.2d 396], and that he was improperly subjected to two extended term hearings under section 1170.2, subdivision (b). We issued an order to show cause why the relief prayed for should not be granted.

The record shows that defendant committed a number of armed robberies in 1975 while on parole for a previous robbery conviction. He was apprehended and convicted of 12 robberies with use of a firearm. While imprisoned for these convictions, defendant was convicted and sentenced for two additional robberies in 1976 (Santa Clara No. 62562 and Riverside No. 14036). Consequently, when the DSL took effect on July 1, 1977, defendant was imprisoned for at least four separate convictions on which he had been sentenced pursuant to the Indeterminate Sentence Law (ISL).

In light of defendant's record, the Community Release Board (CRB) determined, pursuant to section 1170.2, subdivision (b), that defendant should serve a term longer than the basic DSL term prescribed by section 1170.2, subdivision (a). The CRB held an extended term hearing on April 19, 1978, to consider defendant's case. At that hearing, defendant was given a term of seven years, eight months. Riverside No. 14036 was utilized as the principal offense for which he received a total of six years. He also received a consecutive one year, eight months term for Santa Clara No. 62562 which consisted of one year for the offense itself and an eight-month enhancement for use of a firearm pursuant to section 667.5, subdivision (c)(8). Defendant was given no additional time for his other ISL sentences, since they had been considered as enhancement in establishing the base term for his principal offense.

In 1979, defendant petitioned the Superior Court of San Bernardino County for a writ of habeas corpus, raising questions regarding pre-

---

[1]Unless otherwise indicated, all section references in this opinion are to the Penal Code.

sentence credits pursuant to section 2900.5, postsentence credits under *People v. Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], and enhancement for firearm use under *People v. Harvey, supra,* 25 Cal.3d 754. After a show cause hearing, the superior court granted defendant's petition for habeas corpus in part. It ruled that defendant was entitled to an additional 222 days presentence credit under section 2900.5 and ordered that petitioner's minimum time in custody be recomputed to allow postsentence credits. The trial court also denied defendant's requested relief under *Harvey* without prejudice, on the ground that he had not exhausted his administrative remedies on that issue.

Defendant subsequently filed an administrative appeal with the Board of Prison Terms (BPT, successor to CRB), contending that according to *Harvey* his sentence had been improperly enhanced by addition of eight months under section 667.5, subdivision (c)(8), for use of a firearm. The BPT determined that defendant met the criteria for review of his sentence in accordance with an administrative directive[2] which had been promulgated in response to our Supreme Court's decision in *People v. Harvey, supra,* 25 Cal.3d 754, and "granted his appeal." However, rather than reducing defendant's sentence by eight months, the BPT, as authorized by the administrative directive, determined that an extended term hearing concerning defendant's DSL sentence should be scheduled. On June 18, 1980, such hearing was held and the BPT found that the "Harvey decision would result in an inadequate period of confinement under provisions of PC § 1170.2(b). Prisoner's criminal record places him in the category of person[s] described in PC § 1170.2(b) where the necessity to protect the public from the repetition of extraordinary crimes of violence, against the person is the paramount consideration." The BPT ordered that "due to the findings and reasons set forth above," defendant's total term should remain seven years, eight months.

---

[2]Administrative directive 79-28 provides:

"ADMINISTRATIVE DIRECTIVE NO. 79-28

"SUBJECT: Implementation of *People v. Harvey*

"On December 27, 1979 the California Supreme Court's decision in *People v. Harvey,* 25 Cal.3d 754 (1979) became final. The decision holds that subordinate consecutive terms calculated under Penal Code section 1170.1(a) shall *not* include one-third of any enhancements if the felony is a violent felony only because it is listed in Penal Code Section 667.5(c)(8). Penal Code section 667.5(c)(8) states that a violent felony is:

"'Any other felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section

In this petition for writ of habeas corpus, defendant contends that he has not received proper credit for presentence time served under section

12022.7 on or after July 1, 1977, or as specified prior to July 1, 1977 in Sections 213, 264 and 461, or any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5.'

"In *People* v. *Harvey*, the defendant received consecutive sentences for two counts of robbery with use of a firearm. The sentence was established as follows:

| "Principle Term: | Robbery | 4 years (upper term) |
| | Use of Firearm | 2 years |
| "Subordinate Term: | Robbery | 1 year (1/3 of 3-year middle term) |
| | Use of Firearm | 8 months (1/3 of 2-year firearm enhancement) |

"The court held that the eight months for the firearm use in the subordinate consecutive offense must be deleted because the subordinate consecutive offense was not a violent felony listed in Penal Code Section 667.5(c)(1)-(7).

"In calculating terms under Penal Code Section 1170.2 and Welfare and Institutions Code Section 6316.1, the Community Release Board has added one-third of the enhancement if the subordinate offense was violent under Penal Code Section 667.5(c)(8). See CRB §§ 2150(c)(2) and 2154(b).

"Any prisoner or patient who meets all of the following requirements should file an administrative appeal requesting recalculation pursuant to *Harvey*:

"1. The prisoner has a term set by the Board under Penal Code Section 1170.2(a) or (b);

"2. The term includes subordinate terms for consecutive offenses;

"3. The subordinate term includes 1/3 of a 12022.5 or 12022.7 enhancement; and

"4. The consecutive offense is not listed in Penal Code Section 667.5(c)(1)-(7).

"The Board hereby delegates to the Classification and Parole Representatives the authority to make an appropriate disposition in any administrative appeal contending that a term calculated under Penal Code Section 1170.2 should be recalculated under *Harvey*. Appeals by hospital patients should be forwarded by hospital staff to the Board. Upon receipt of such an appeal, the C&PR shall review the case.

"1. If *Harvey* does not apply to the case, the C&PR shall deny the appeal. The prisoner may refile the appeal and request review by the Board Appeals Unit.

"2. If *Harvey* does apply, the C&PR shall grant the appeal, and:

"a. If the Board's original action was to approve the date calculated under Penal Code Section 1170.2(a), the C&PR shall direct the Correctional Case Records Manager to prepare a new CDC 678 and present it to one hearing representative. The hearing representative shall determine whether the new CDC Form 678 should be approved and referred to two additional representatives for confirmation or referred to two Board members for extended term hearing screening.

"b. If the Board's original action was to establish a release date at an extended term hearing, the C&PR shall direct the Correctional Case Records Manager to delete the enhancements on the extended term hearing decision (CRB Form 1094) and refer the case to two Board members and a hearing representative for extended term hearing screening.

"In either situation, the Board may schedule the prisoner for an extended term hearing or may confirm the date calculated after deleting the enhancements under *Harvey* (CRB § 2161.1). A prisoner may not appeal the recalculation of the term until the date is confirmed or the date established at the extended term hearing. The screening should be completed within 90 days of the date the appeal is granted and any extended term hearing should be held within 120 days of that date. To the extent possible, cases should be presented for screening and scheduled for extended term hearings according to the newly calculated release date, those with the earliest release dates first. A case

2900.5; that his sentence was improperly enhanced for use of a firearm and should be reduced by eight months under *People* v. *Harvey, supra*, 25 Cal.3d 754; and that neither of the two serious offender hearings given him was timely or legal. We find no error in the recomputation of defendant's sentence to reflect presentence credits earned under section 2900.5, or in the action taken at the original serious offender hearing.[3] Nor, as we explain below, do we find any merit in defendant's contention that the BPT exceeded its authority in subjecting him to the second serious offender hearing. We have therefore concluded that defendant's petition for a writ of habeas corpus must be denied.

## I

■ The main issue presented by this proceeding is whether the BPT had the authority to hold a second extended term hearing to reconsider the adequacy of his DSL term as a consequence of the Supreme Court's decision in *People* v. *Harvey, supra*, 25 Cal.3d 754.

---

may be forwarded to the Board's central office for screening if a Board panel will not be at the institution in time to screen the case within 90 days.

"Prisoners who received court imposed determinate terms and believe *Harvey* applies should write to the sentencing court. (See Administrative Bulletin 80-1.) Prisoners who have both court imposed determinate terms and terms established under Penal Code Section 1170.2 should apply to the court for the court imposed term, the Board for the Section 1170.2 term or both the court and the Board if *Harvey* applies to both.

"[s] Howard Way

"HOWARD WAY

"Chairman"

[3]As respondent points out in its return to the petition for writ of habeas corpus, defendant has apparently never challenged the legality of his first serious offender hearing in any administrative appeal. Since he has not taken any action to exhaust his administrative remedies on this issue, this court's holding in *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rtpr. 286], precludes him from raising the issue in a petition for a writ of habeas corpus at this time. Nor can we find any irregularity in the time period during which the first serious offender hearing was held. At the time the hearing was held, section 1170.2, subdivision (b), required an extended term hearing to be held before April 1, 1978, or within 120 days of receipt of the prisoner, whichever was later. The enabling legislation, however, permitted the CRB to extend the April deadline by 90 days unless such extension were vetoed by the Legislature. (Stats. 1977, ch. 165, § 18, p. 651.) According to the return, such a resolution was passed, and was not vetoed by the Legislature. (A copy of the resolution, designated exhibit F, was apparently supposed to be attached to the return. However, no such exhibit can be found in the materials attached.)

Respondent also argues that *Muszalski* blocks consideration of the legality of defendant's second extended term hearing. Defendant did, however, raise the question of an error in his sentence pursuant to *People* v. *Harvey, supra*, 25 Cal.3d 754, in an administrative appeal. Since his second extended term hearing was directly triggered by the granting of his *Harvey* appeal, the questions of *Harvey* credits and the legality of a second serious offender hearing on his DSL sentence are inextricably bound together,

Section 1170.2, subdivision (b), states that for prisoners who have been sentenced under the ISL, the BPT must establish a parole date based on the provisions of the DSL as set out in subdivision (a) of the section, unless the BPT determines that because of the number and/or seriousness of the prisoner's crimes he or she should serve a term longer than that mandated by subdivision (a). In that event, the BPT must schedule an extended term or serious offender hearing. The statute provides that "[t]he hearing shall be held before October 1, 1978, or *within 120 days of receipt of the prisoner*, whichever is later." (Stats. 1978, ch. 329, §§ 1, 7, p. 674, 678-679; italics added.) Since defendant's second extended term hearing was held in 1980, our decision hinges on the interpretation of the phrase "within 120 days of receipt of the prisoner."

In *In re Caudillo* (1980) 26 Cal.3d 623 [164 Cal.Rptr. 692, 610 P.2d 1021], our Supreme Court considered the meaning of the phrase "within 120 days of receipt of the prisoner." The question in *Caudillo* was whether the CRB (BPT's predecessor) had the power to hold a serious offender hearing and extend the term of defendant Caudillo who had been sentenced under the ISL and had won a reduction of his ISL sentence on appeal. The facts of *Caudillo*, and our Supreme Court's reasoning in support of its decision in that case, are highly significant for this appeal:

Defendant Caudillo was convicted of multiple felonies in 1975 and sentenced to state prison for a term of 15 years to life under the ISL. After the DSL took effect on July 1, 1977, the CRB recomputed Caudillo's prison term pursuant to section 1170.2, subdivision (a). It was tentatively determined that defendant should serve three years base term for burglary enhanced by one year for use of a deadly weapon and three years for infliction of great bodily injury (based on a trial court finding), for a total DSL term of seven years. After reviewing Caudillo's file, two CRB members felt that he should serve an extended term pursuant to section 1170.2, subdivision (b). On April 6, 1978, a serious offender hearing was held at which Caudillo's base term for burglary was increased to four years and the three-year enhancement for great bodily injury was retained. Inadvertently, however, in setting the extended term the CRB failed to consider the abovementioned one-year enhancement for use of a deadly weapon. As a result Caudi-

so that defendant may properly question the hearing's legality in a petition for a writ of habeas corpus pursuant to *Harvey*.

llo's CRB term was again set at seven years after his serious offender hearing. (*Id.*, at p. 627.)

After the CRB became aware of its omission in setting Caudillo's extended term, it held another hearing on July 11, 1978, at which it decided that the seven-year term was "appropriate," and, since his ISL sentence translated to seven years under section 1170.2, subdivision (a), his term should be set under subdivision (a) and an extended term under subdivision (b) "was not then necessary." (*Id.*, at p. 628.)

In September 1978, the Department of Corrections released Caudillo on parole after recomputing his sentence pursuant to the amended abstract of judgment issued by the superior court following receipt of the remittitur from the Supreme Court in *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], ordering the finding of great bodily harm stricken from the judgment. The amended abstract was received by the department on August 8, 1978. The department had administratively recomputed Caudillo's sentence to four years (three for burglary and one for use of a deadly weapon) and set his parole release date for September 22, 1978.

When apprised of Caudillo's release, the CRB had him rearrested for the purpose of holding another serious offender hearing. On November 29, 1978, a new serious offender hearing was held and the CRB found him to be an appropriate subject for serious offender treatment and extended his term to seven years. Caudillo petitioned the Supreme Court for a writ of habeas corpus, contending, among other things, that the CRB acted in excess of its jurisdiction in subjecting him to a second serious offender hearing more than 120 days after he had been *physically* received in the prison.

In affirming the action of the CRB, the high court characterized the issue raised by *Caudillo* in very broad terms: "The initial question in this case is whether the CRB has the authority to consider or reconsider the appropriateness of serious offender treatment when a sentence has been revised." (*Id.*, at p. 633.) The court also referred at length and repeatedly to the Legislature's purpose in enacting section 1170.2, subdivision (b). In its introduction, the court explained that "[t]he Legislature recognized . . . that in some cases the conversion of ISL sentences into DSL equivalents would result in an inappropriate reduction of prison terms for dangerous prisoners. Consequently, in order to protect the public from the premature release of such dangerous

persons, the Legislature established a 'serious offender' procedure as a safety valve, authorizing the CRB—in cases in which the regular DSL term was inappropriate for an ISL prisoner—to take into consideration the dangerousness of the offender in establishing a new term under the DSL." (*Id.*, at p. 626.) In its analysis of the DSL statute and its legislative history, the court stated that "[t]he Legislature recognized that situations might arise in which *mechanical recomputation* from an ISL sentence to a DSL term ... would result in the imposition of prison terms of inappropriate length. (*In re Flodihn*, 25 Cal. 3d 561, 569-570....)" (*Id.*, at p. 631; italics supplied.) The court also noted that "[t]he subdivision contains an explicit legislative declaration of a major factor to be taken into account by the CRB in setting a serious offender term, declaring that 'the necessity to protect the public from repetition of extraordinary crimes of violence against the person is the *paramount consideration.*'" (*Id.*, at p. 632; see also *id.*, at p. 634; italics supplied.)

Turning specifically to the extent of the CRB's jurisdiction to hold serious offender hearings and prescribe extended terms for defendants originally sentenced under the ISL, the *Caudillo* court observed initially that "in light of the legislative purpose underlying the serious offender procedure, we believe that the Legislature intended that the CRB have a reasonable opportunity to consider the appropriateness of serious offender treatment at a time when the CRB *actually knows* of the terms of the defendant's final judgment." (*Id.*, at p. 626; original italics.) The court also noted that "[t]he CRB is endowed with significant discretion in fixing a prisoner's term under subdivision (b)." (*Id.*, at p. 632.) Finally, the court considered and rejected defendant Caudillo's argument that "120 days from receipt of the prisoner" must be interpreted to refer to the state prison's physical receipt of the prisoner, whether or not his or her sentence has been altered subsequent to that initial entry into prison. The court concluded that under defendant Caudillo's interpretation "the CRB would frequently lose jurisdiction to determine the appropriateness of serious offender treatment before the prisoner's *ultimate* ISL judgment was ever issued or received by the Department of Corrections. In light of the purpose of the serious offender provisions, we do not believe that the Legislature intended such a result. Since the serious offender procedure necessarily assumes that the CRB will have notice of the prisoner's actual judgment before the CRB makes the serious offender determination, we conclude that the statutory reference to 'receipt of the prisoner' must be

interpreted to designate the receipt of the prisoner under an original or a modified ISL judgment." (*Id.*, at p. 635.)

Turning to the case at bench, it is our task to determine whether the phrase "within 120 days of receipt of the prisoner" can be interpreted to mean "within 120 days of modification of a DSL term required by judicial interpretation of the DSL statute." Defendant contends that such an interpretation cannot be put on the phrase. He maintains that the *Caudillo* court's interpretation "within 120 days of receipt of . . . an original or a modified ISL judgment" represents the outer limit of jurisdiction beyond which the BPT (successor to the CRB) cannot go in imposing extended terms on serious offenders. As we explain below, we cannot agree that *Caudillo* is the definitive and delimiting interpretation of the jurisdiction conferred on the BPT by section 1170.2, subdivision (b).

█ A statute must be construed in light of the legislative purpose and design, and, in enforcing its command, "both the policy expressed in its terms and the object implicit in its history and background should be recognized." (*People v. Navarro* (1972) 7 Cal.3d 248, 273 [102 Cal.Rptr. 137, 497 P.2d 481]; *People v. Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859]; *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 53 [152 Cal.Rptr. 153].) █ As *Caudillo* is at pains to point out, the legislative intent in formulating section 1170.2, subdivision (b), indeed its "paramount consideration," was to protect the community from the consequences of the premature release of prisoners with violent propensities. (§ 1170.2, subd. (b); *In re Caudillo, supra,* 26 Cal.3d 623, 632.) To recognize the BPT's jurisdiction to make serious offender determinations in the wake of a judicially mandated modification of ISL judgments, while depriving it of jurisdiction to make such determinations following judicially mandated modifications of DSL terms, would seriously thwart the Legislature's goal in enacting section 1170.2, subdivision (b). The BPT would be deprived of the opportunity to consider serious offender treatment at a time when it first "actually knows" what the correct DSL term under section 1170.2, subdivision (a), should be. (See *id.,* pp. 626, 631.) It would be precluded from utilizing the "safety valve" provided by subdivision (b) to design a prison term of appropriate length for the dangerous offender. (See *id.,* pp. 626, 631.) In view of these considerations, we believe that the *Caudillo* rationale applies equally to a judicially mandated modification of a

sentence which has been converted from an ISL judgment to a DSL term.

In *Caudillo*, our high court answered the question "whether the CRB has the authority to consider or *reconsider* the appropriateness of serious offender treatment when a sentence has been revised" in the affirmative, stating: "In light of the statutory purpose of the serious offender provisions, we think that the CRB has such power. Alteration of an ISL sentence changes the corresponding DSL term. The CRB's view of the adequacy of the new DSL equivalent may very well differ from its initial assessment. In providing for serious offender treatment the Legislature sought to make sure that, in converting California's sentencing procedure from the ISL to the DSL, the public would be protected from the premature release of potentially dangerous and violent ISL offenders. It necessarily follows that the CRB should be able to consider serious offender treatment in light of an altered sentence." (*In re Caudillo, supra*, 26 Cal.3d 623, 633.)

Defendant argues that the interpretation which we adopt would conflict with one of the Legislature's primary goals in enacting the DSL statute—that of protecting prisoners from indefinitely prolonged uncertainty concerning the length of their confinement, citing *People v. McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382], and *In re Johnson* (1980) 107 Cal.App.3d 780 [166 Cal.Rptr. 84]. Since the reconsideration must take place within 120 days of the revision of the sentence, it does not result in prolonged uncertainty concerning ultimate release date. Moreover, even if such reconsideration might result in some uncertainty as to length of confinement, the Legislature has stated that, in the case of dangerous offenders, shielding the community from the results of premature release is its "paramount consideration." (§ 1170.2, subd. (b); *In re Caudillo, supra*, 26 Cal.3d 623, 632.) Finally, *McGee* and *Johnson* are inapposite. *McGee*, a welfare fraud case, states that statutory procedures are "mandatory" if they are "designed to protect individuals who are the subject of adverse governmental action. . . ." (*People v. McGee, supra*, 19 Cal.3d 948, 955.) *Johnson*, which deals with a serious offender hearing held some 140 days after physical receipt of a prisoner, holds that the 120-day provision of section 1170.2, subdivision (b), is "mandatory" rather than "directory." (*In re Johnson, supra*, 107 Cal.App.3d 780, 785-786.) We do not hold that the 120-day provision is not mandatory; rather, we have determined that the BPT complied with the statutory requirement.

## II

We turn briefly to defendant's contentions concerning presentence credits under section 2900.5. Initially, defendant maintains that he was not credited with 222 days presentence credit due him on Riverside No. 14036. The abstract of defendant's prison record accompanying respondent's return shows, however, that defendant received this credit on March 26, 1980. Defendant also maintains in his traverse that he should be credited with an additional 75 days presentence credit on Santa Clara No. 62562. Since defendant cites neither facts nor legal authority to support this assertion, however, we cannot consider this question.

### DISPOSITION

The petition for a writ of habeas corpus is denied.

Gardner, P. J., and Kaufman, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied April 29, 1981.