[No. B008116. Second Dist., Div. Seven. Jan. 24, 1985.]

In re GEORGE AUBREY PHILPOTT on Habeas Corpus.

[No. B008117. Second Dist., Div. Seven. Jan. 24, 1985.]

In re DANIEL LEE KENNEDY on Habeas Corpus.

1154

COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff and Chloris A. deBrauwere, Deputy Public Defenders, for Petitioners.

John K. Van de Kamp, Attorney General, Robert F. Katz and William T. Harter, Deputy Attorneys General, for Respondent.

OPINION

LILLIE, P. J.—In these consolidated cases, George Aubrey Philpott and Daniel Lee Kennedy each seeks immediate release by way of petition for writ of habeas corpus, asserting that his present incarceration in state prison pursuant to parole revocation exceeds the 12-month maximum confinement set forth in Penal Code section 3057, subdivision (a). On each petition we issued order to show cause. For the reasons hereinafter stated, we deny each petition and discharge the order to show cause.

I

*In re Philpott, No. B008116*

Following conviction of attempted burglary, Philpott was sentenced to 18 months in state prison. After serving approximately 10 months, he was released on parole on April 29, 1982. On July 8, 1982, petitioner tested positive for morphine; he was placed in custody and his parole was revoked

for a period of two months. Petitioner again was arrested, on June 14, 1983, for forgery, possession of a deadly weapon and use of heroin. This time his parole was revoked for 12 months; he was released from confinement in state prison pursuant to that revocation on June 14, 1984. On August 2, 1984, he was arrested for an assault, and his parole was revoked for a period of 12 months. Philpott presently is in custody pursuant to this most recent parole revocation.

He asserts in his petition that he is being held in illegal custody inasmuch as Penal Code section 3057 provides for a maximum of 12 months incarceration for parole revocation, and he has already spent more than 12 months in custody as a result of revocation of parole. He therefore seeks an order directing the Board of Prison Terms to release him from confinement under the assertedly illegal confinement order of the Department of Corrections. Philpott's petition for writ of habeas corpus on the same ground filed in the Los Angeles Superior Court was denied on October 22, 1984.

II

*In re Kennedy, No. B008117*

In 1980, Kennedy was sentenced to three years in state prison after conviction of petty theft with a prior, and issuing checks without sufficient funds. He was released on parole on May 14, 1982. In December 1982 he was charged with misdemeanor forgery; he entered a guilty plea thereto and was sentenced to 24 days in custody. His parole was revoked for a period of nine months. He was released from state prison on September 16, 1983. He failed to immediately report to his parole officer and his parole was revoked on October 20 for a period of two months. On August 19, 1984, Kennedy was arrested on a parolee-at-large warrant issued in July 1984 after he failed to report to his parole officer. This time his parole was revoked for nine months. He is presently in state prison.

Kennedy seeks immediate release from his present confinement on the ground that he has already been confined for more than the 12-month maximum permitted for parole revocation under Penal Code section 3057. He filed petition for writ of habeas corpus in superior court which was denied on October 22, 1984.

III

DISCUSSION

Penal Code section 3057, subdivision (a) provides: "Confinement pursuant to a revocation of parole in the absence of a new conviction and

commitment to prison under other provisions of law, shall not exceed 12 months . . . ." ■■ ■■ Petitioners argue that a plain reading of the section limits a parolee's cumulative maximum amount of confinement for parole revocation to 12 months. We do not agree. The maximum confinement described in the section is for *a* revocation of parole, clearly referring to each separate revocation rather than to *all* revocations of parole one might suffer. To interpret the section as applicable to multiple revocations would render meaningless the word "a" appearing before the phrase "revocation of parole." ■ This runs afoul of the well-established rule of statutory construction that significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. A construction making some words surplusage should be avoided. (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].)

■■ Petitioners' argument would fare better under the language of section 3057 as *originally* enacted in 1976. It then read: "Confinement pursuant to parole revocation ... shall not exceed six months." However, before that statute went into effect, it was amended to read: "Confinement pursuant to *a* revocation of parole ... shall not exceed six months." (Pen. Code, § 3057, subd. (a) as amended by Stats. 1977, ch.165, § 58, p. 669 eff. June 29, 1977, operative July 1, 1977; italics added.) This legislative change in language by the addition of the word "a" before "revocation of parole," as the statute now reads is significant for it manifests the intention of the Legislature to make it clear beyond dispute that the six-month maximum applied to each separate parole revocation regardless of how many times the same parole is violated. ■ " 'It is a settled principle of statutory construction that a material change in the phraseology of a legislative enactment is ordinarily viewed as showing an intention on the part of the Legislature to change the meaning of the statute.' [Citation.]" (*Sacramento Typographical Union No. 46* v. *State of California* (1971) 18 Cal.App.3d 634, 638 [96 Cal.Rptr. 194].) ■ The addition of the word "a" indicated the intent of the Legislature to make the six-month confinement limitation applicable to each individual revocation of parole, rather than to all revocations of a parole, combined. Moreover, the statute again was amended in 1978 to increase the maximum confinement for a revocation of parole from six to twelve months. This was the only statutory change; the Legislature permitted the language "pursuant to *a* revocation of parole" to remain, changing only the maximum confinement limitation. The confinement of these petitioners for *each* revocation of parole did not exceed the 12-month maximum provided in section 3057. The fact that each petitioner had his parole revoked several times, thereby causing his total confinement for all the revocations to exceed 12 months, does not make the present confinement for yet another revocation unlawful under section 3057.

In 1983, subdivision (c) was added to section 3057, providing: "Notwithstanding the limitation in subdivision (a) upon confinement pursuant to a parole revocation, the board may extend the confinement pursuant to parole revocation for a maximum of an additional 12 months for subsequent acts of misconduct committed by the parolee while confined pursuant to that parole revocation." The reference to the subdivision (a) limitation upon confinement again refers to "*a*" parole revocation; the exception to that limitation refers to confinement "pursuant to *that* revocation." The use of these words clearly indicates that the subdivision (c) exception is applicable to *each* individual revocation of parole. "[I]t is generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute." (*People* v. *Dillon* (1983) 34 Cal.3d 441, 468 [194 Cal.Rptr. 390, 668 P.2d 697].) We cannot avoid the conclusion that the Legislature, by its use in subdivision (a) of the same statute of the same word, "a," before "revocation of parole," intended the 12-month limitation upon confinement to apply to each individual revocation of parole.

A statute must be construed in light of its legislative purpose and design. (*In re Schaefer* (1981) 116 Cal.App.3d 588, 597 [172 Cal.Rptr. 335].) The purpose of parole is expressly set forth in Penal Code section 3000: "The Legislature finds and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the state to provide for the supervision of and surveillance of parolees and to provide educational, vocational, family and personal counseling necessary to assist parolees in the transition between imprisonment and discharge." Perhaps the most effective tool for the described supervision of parolees is the power of the Board of Prison Terms to suspend or revoke parole and order a parolee's return to prison for a violation of the terms of his parole. (Pen. Code, § 3060.) An interpretation of section 3057 which limits the use of this power to a total of 12 months of confinement for parole violations, regardless of how many violations occur, seriously undercuts the usefulness of this tool. Once the Board of Prison Terms had "used up" this 12-month maximum for a particular parolee, it would be left without any such power for use in the event of subsequent parole violations. Free of the threat that he might be returned to confinement yet again for a violation of parole, a parolee doubtless will be less motivated to abide by the terms of his parole. Supervision of the parolee is thus made more difficult, and the likelihood of his successful reintegration into society more uncertain. We do not consider an interpretation which may lead to such a situation to be consonant with the legislative recognition of the need for surveillance and supervision of parolees in the interest of public safety. (Pen. Code, § 3000.)

██ ██ Petitioners are not by this interpretation left without protection from unlimited confinement for multiple parole violations. Section 3000 sets forth the maximum statutory period of parole. Subdivision (d) states in pertinent part: "Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward such period of parole unless the prisoner is found not guilty of the parole violation. However, in no case, except as provided in Section 3064, may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his initial parole . . . ."[1] The statutory scheme thus contemplates a maximum of three years supervision on parole, a maximum of twelve months confinement for *each* parole revocation, but in no event more than a total of four years of parole supervision and confinement for parole revocation.

*Disposition*

The petitions are denied.

Thompson, J., and Johnson, J., concurred.

---

[1]The period of parole for a prisoner who has received a life sentence may not exceed five years, and such prisoner may be retained under parole supervision or in custody pursuant to parole revocation for a maximum of seven years. (Pen. Code, § 3000, subds. (b), (d).)