TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

| | |
|---|---|
| OPINION : | |
| : | |
| of : | |
| : | |
| JOHN K. VAN DE KAMP : | No. 87-503 |
| Attorney General : | |
| : | OCTOBER 1, 1987 |
| RODNEY O. LILYQUIST : | |
| Deputy Attorney General : | |

----------------------------------------------------------------

THE STATE COUNCIL ON DEVELOPMENTAL DISABILITIES has requested an opinion on the following question:

What is the definition of the term "excess parental fees" as used in Welfare and Institutions Code section 4677?

CONCLUSION

"Excess parental fees," as that term is used in Welfare and Institutions Code section 4677, refers to all parental fees remaining in the Developmental Disabilities Program Development Fund after appropriation in the Budget Act for new program development.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme (Welf. & Inst. Code, §§ 4500-4846)[1] known as the Lanterman Developmental Disabilities Services Act (§ 4500; "Act") to provide services to developmentally disabled persons in a coordinated manner throughout the state (§ 4501). The services include locating persons with developmental disabilities (§ 4641), assessing their needs (§§ 4642-4643), and providing the aid necessary to meet such needs (§§ 4646-4648). The services are provided through regional centers operated by private nonprofit community agencies under contract with the Department of Developmental Services ("Department"). (§§ 4620-4636, 4648.) The purposes of the Act are to prevent or minimize the institutionalization of developmentally disabled persons and their dislocation from family and community and to enable them to approximate the pattern of everyday living of nondisabled persons of the same age and to lead more independent and productive lives in the community (§§ 4501, 4750-4751). (See generally Conservatorship of Valerie N. (1985) 38 Cal.3d 384, 388-390; 64 Ops.Cal.Atty.Gen. 910, 911 (1981); 62 Ops.Cal.Atty.Gen. 229, 230 (1979); Myers et al., Legislative Evolution of a Statewide Service System: California's Regional Centers for Developmentally Disabled Persons (1938) 14 Rutgers L.J. 653.)

The parents of children receiving services pay certain fees to help cover the costs of the services provided. (§§ 4677, 4782-4784; Cal. Admin. Code, tit. 17, §§ 50201-50241; 66 Ops.Cal.Atty.Gen. 505, 506-507 (1983); 64 Ops.Cal.Atty.Gen. 910, 914 (1981).) The question presented for analysis concerns the use of such fees as set forth in section 4677. Section 4677 states in part:

"(a) All parental fees collected by or for regional centers shall be remitted to the State Treasury to be deposited in the Developmental Disabilities Program Development Fund, which is hereby created and hereinafter called the Program Development Fund. The purpose of the Program Development Fund shall be to provide resources needed to initiate new programs, consistent with approved priorities for program development in the state plan.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"On or before October 1, 1982, the State Council on Developmental Disabilities shall request from all regional centers information on priority services needed but currently unavailable. Based on the information provided by the regional centers and other local agencies, the State Council on Developmental Disabilities shall annually develop an assessment of the level of need for new community programs. This needs assessment shall be included in the state plan. The State Council on Developmental Disabilities, in consultation with the State Department of Developmental Services, shall make a recommendation to the Department of

---

[1]All references hereafter to the Welfare and Institutions Code are by section number only.

Finance as to the level of funding for program development to be included in the Governor's Budget, based upon this needs assessment.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) In addition to parental fees and General Fund appropriations, the Program Development Fund may be augmented by federal funds available to the state for program development purposes, when these funds are allotted to the Program Development Fund in the state plan.  The Program Development Fund is hereby appropriated to the department, and subject to any allocations which may be made in the annual Budget Act.  In no event shall any of these funds revert to the General Fund.

"(d) The department may allocate funds from the Program Development Fund for any legal purpose, provided that requests for proposals and allocations are approved by the state council in consultation with the department, and are consistent with the priorities for program development in the state plan. . . .

"<u>Consistent with the level of need as determined in the state plan, excess parental fees may be used for purposes other than new program development only when specifically appropriated to the State Department of Developmental Services for those purposes.</u>

"For the 1982-83 fiscal year only, parental fees in excess of those appropriated in the Budget Act of 1982 are hereby appropriated to the State Department of Developmental Services for purchasing services by regional centers." (Emphasis added.)

We are asked what is meant by the use of the term "excess parental fees" in subdivision (d) of section 4677.  We conclude that it refers to all parental fees remaining in the Developmental Disabilities Program Development Fund ("Fund") after appropriation in the Budget Act for new program development.

The State Council on Developmental Disabilities ("Council") is responsible for, among other duties, developing a state plan describing the service needs of persons with developmental disabilities and the goals for ensuring that such needs are addressed. (§§ 4520, 4540, 4561.)  Subdivision (b) of section 4561 requires that the plan contain:

"A part recommending priorities for program and facility development or expansion.  Such recommendations shall include statements of justification of need, specific objectives of programs to be developed, amount and sources of funding, timing and agencies responsible for implementation. . . ."

This part of the plan contains the "needs assessment" for new community programs

identified in section 4677 for which the Council recommends a level of funding to be included in the Governor's Budget.

In addition to parental fees, the Fund may contain both General Fund appropriations and federal funds. (§ 4677, subd. (b).) The specific purpose of the Fund is "to provide resources needed to initiate new programs, consistent with approved priorities for program development in the state plan." (§ 4677, subd. (a).) "Excess parental fees," however, "may be used for purposes other than new program development" as long as such appropriations are "[c]onsistent with the level of need as determined in the state plan." (§ 4677, subd. (d).)[2]

The term "excess" normally refers to the amount or degree by which one thing exceeds another. (See Webster's New Internat. Dict. (3d ed. 1971) p. 792.) "Excess parental fees" would thus mean the amount of parental fees by which some amount of parental fees exceeds a lesser amount. The "some amount" here is the total amount of parental fees in the Fund. The issue raised by the question is the identification of the "lesser amount." The possibilities appear to be: (1) the amount the Council recommends in the state plan for new program development, (2) the amount included in the Governor's Budget for the new development, and (3) the amount appropriated by the Budget Act for new program development.

In a hypothetical year, as an example, the amount of $5 million in parental fees is on deposit in the Fund. In the state plan for the year the Council assesses the need for new community programs by listing 39 programs and recommends the amount of $4 million in parental fees for the funding of these new programs. It recommends this same amount as the level of funding for new program development to be included in the Governor's Budget. However, the Governor's Budget is submitted containing only the sum of $2 million in parental fees for program development. The Budget Act as enacted for the year contains the amount of $3 million in parental fees for new community programs.

As indicated, one interpretation of section 4677 is that "excess parental fees" are those remaining in the Fund after the Council has determined what fees are needed to cover the cost of new program development. In the example given, $1 million in fees would be considered "excess" under this interpretation. It is the Council that is responsible for determining the needs assessment in the state plan and hence, it may be argued, the recommendation of the Council in the plan as to the level of funding for program development from parental fees would be the one that must be considered "[c]onsistent with the level of need as determined in the state plan." Any fees

_____

[2]We view the authorization to use the fees "for purposes other than new program development" as an express exception to the general requirement that the Fund is "to provide resources needed to initiate new programs." To the extent the conditions for the exception are applicable, it must be given meaning and would control over the more general language. (See Estate of Banerjee (1978) 21 Cal.3d 527, 540; Romak Iron Works v. Prudential Ins. Co. (1980) 104 Cal.App.3d 767, 776.) Also to be noted is the provision that the Fund is "subject to any allocations which may be made in the annual Budget Act."

in the Fund above the Council's recommendation would be "excess" and available for other purposes.

On the other hand, it may be argued that excess parental fees would be those available in the Fund for other purposes after deducting the amount of fees specified in the Governor's Budget or in the Budget Act for new community programs. In the example given the amount would be either $3 million or $2 million. The "level of need as determined in the state plan" refers to specified programs in the plan, it may be argued, and not to a particular level of funding recommended by the Council for the programs. The funding level is determined only in the Governor's Budget or by the Governor and the Legislature in the Budget Act; arguably, it is only they who determine what amount of program development funding from parental fees is "[c]onsistent with the level of need as determined in the state plan." Above such funding level are excess fees available for other purposes.

Section 4677 does not indicate who is to decide the question of consistency. The word "consistent" as used in the statute is itself somewhat ambiguous. Generally it means "marked by agreement and concord . . . coexisting and showing no noteworthy opposing, conflicting, inharmonious, or contradictory qualities . . . compatible." (Webster's New Internat. Dict. (3d ed. 1971) p. 484.) The Legislature did not, for example, state: "After meeting the level of need as determined in the state plan, excess parental fees may be used . . . ."

The "excess parental fees" language was added to section 4677 in 1982 (Stats. 1982, ch. 327, § 203) as part of a complex program "to implement the Budget Act of 1982" (Stats. 1982, ch. 327, §§ 1, 253). In 1983 (Stats. 1983, First Ex. Sess. 1983-84; ch. 16, § 1) the Legislature specifically incorporated into the statute the following appropriation language:

> "For the 1982-83 fiscal year only, parental fees in excess of those appropriated in the Budget Act of 1982 are hereby appropriated to the State Department of Developmental Services for purchasing services by regional centers."

Is the latter language an example and implementation of what the "excess parental fees" provision was meant to authorize? We believe so. It is a specific appropriation of parental fees to the Department for a purpose other than program development and limited to "parental fees in excess of those appropriated in the Budget Act of 1982." The term "excess" has direct reference to the Budget Act appropriation. The 1983 statutory language is necessary to comply with the 1982 legislative requirement.

It is fundamental that "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (People v. Black (1982) 32 Cal.3d 1, 5; accord People v. Craft (1986) 41 Cal.3d 554, 560.) Legislation is to "be construed so as to harmonize its various elements." (Wells v. Marina City Properties, Inc. (1981) 29 Cal.3d 781, 788.) "'[W]hen a word or phrase has been given a particular scope or meaning in one part or portion of the law it shall be given the same scope and meaning in other parts or portions of the law.'" (Steketee v. Linz, Williams & Rothberg (1985) 38 Cal.3d 46,

52; (1985) 38 Cal.3d 46, 52; see <u>In re Philpott</u> (1985) 163 Cal.App.3d 1152, 1157.)

Applying these rules, we find with respect to subdivision (d) of section 4677 that "excess parental fees" are "parental fees in excess of those appropriated in the Budget Act." This harmonizes the provisions of this subdivision, with the one provision explanatory of and effectuating the other.

In answer to the question presented, therefore, we conclude that the term "excess parental fees" as used in section 4677 refers to all parental fees remaining in the Fund after appropriation in the Budget Act for new program development.

\* \* \* \* \*